**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Basil HOPKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 24, 2000.

Filed Feb. 23, 2000.

David L. Glassman, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before JOHNSON, J., CERCONE, President Judge Emeritus, and OLSZEWSKI, J.

CERCONE, President Judge Emeritus:

¶ 1 This is a direct appeal from the judgment of sentence imposed after a judge sitting without a jury convicted Appellant, Basil Hopkins, of multiple offenses stemming from an armed robbery. We affirm.

¶ 2 The Honorable Benjamin Lerner has explained the facts underlying this appeal in the following apt manner:

On [March] 4, 1998, shortly after 10 a.m., Thomas Edwards heard a knock at the door of his home located at 2160 E. 74 Street in Philadelphia. When Ed-wards answered the door, appellant struck him in the head with a gun, causing him to fall backwards into the house. Appellant then forced his way into the home and demanded that Edwards "get the money." Appellant knocked Edwards to the floor and, as Edwards lay there, put the gun in his face. Appellant repeated his demands. Edwards managed to break free and run upstairs, all the while being 'pistol whipped' by appellant.

Edwards' elderly foster-parents, Thomas and Mae Bryant, were sitting in their bedroom on the second floor when they heard the commotion.[1] The Bryants opened their bedroom door and observed appellant standing in the hallway, hitting and kicking their foster-son and demanding money. Mr. Bryant shut the door, and his wife called the police. Appellant stopped assaulting Edwards at that point and then attempted to gain entrance to the bedroom by kicking the door. Fearing for their safety and that of their foster-son, the Bryants opened the door and offered appellant money. Appellant took $55 dollars [sic] from Mrs. Bryant's wallet and then began assaulting Edwards again.

At that point, police officers who were admitted to the premises by a relative rushed upstairs where they observed appellant beating Edwards. The officers drew their weapons, ordered appellant to drop his gun and arrested him. The officers confiscated appellant's gun and recovered $95 from his person, including the $55 taken from Mrs. Bryant.

Trial Court Opinion, filed 6/17/99, at 2–3 (hereinafter "Trial Court Opinion") (footnote and citations to the trial transcripts omitted). Appellant was wearing a ski mask at the time he perpetrated the above acts. *Id.*, at 2 n. 2.

---

1. The Reverend Thomas Bryant and his wife, Mae Bryant, were age 78 and 75 respectively at the time of this incident. N.T. Trial, 6/23/98, at 82.

¶ 3 Following a bench trial, Judge Lerner found Appellant guilty on two counts of robbery, and one count each of attempted robbery, aggravated assault, burglary, criminal trespass, theft by unlawful taking, attempted theft, possession of an instrument of crime (PIC), and violating the Pennsylvania Uniform Firearms Act (Carrying firearms on public streets or public property in Philadelphia).[2] The Trial Court also found Appellant guilty on three counts each of simple assault and recklessly endangering another person (REAP).[3] Judge Lerner deferred sentencing pending the preparation of a pre-sentence report. On, August 4, 1998, the Trial Court imposed sentence. Appellant filed a motion to modify, which Judge Lerner denied. However, after Appellant filed an appeal to this Court, the Trial Judge requested that the sentence be vacated to correct a possible sentencing error.

¶ 4 On February 3, 1999, this court vacated the original judgment of sentence and remanded the case for resentencing. On March 5, 1999, Judge Lerner sentenced Appellant to serve three concurrent terms of five (5) to ten (10) years of incarceration for robbery, attempted robbery, and burglary, with a suspended sentence on the remaining convictions. Appellant filed a timely notice of appeal on April 1, 1999. The Trial Court directed Appellant to file a concise statement of matters complained of on appeal pursuant to Rule of Appellate Procedure 1925. Appellant complied on April 21, 1999. In response, Judge Lerner wrote a full opinion which he filed on June 17, 1999. The present appeal raises three issues for our consideration:

I. DID THE COMMONWEALTH PRESENT INSUFFICIENT EVIDENCE OF ROBBERY, THEFT, SIMPLE ASSAULT AND RECKLESS ENDANGERMENT WITH RESPECT TO THE ELDERLY COMPLAINANTS?

II. DID THE COMMONWEALTH PRESENT INSUFFICIENT EVIDENCE OF BURGLARY AND CRIMINAL TRESPASS CONCERNING THE ELEMENTS LICENSE AND PRIVILEGE TO ENTER?

III. DID THE COMMONWEALTH PRESENT INSUFFICIENT EVIDENCE OF CARRYING A FIREARM ON A PUBLIC STREET OR PROPERTY?

Appellant's Brief at 4. We shall address these issues in the order in which they were raised.

¶ 5 As an initial matter, we note that the Pennsylvania Supreme Court has recently stated the well-settled standard to be applied when an appellate court must determine whether the evidence was sufficient to sustain a conviction:

In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt.

*Commonwealth v. Johnson,* 556 Pa. 216, 223, 727 A.2d 1089, 1092 (1999). *Accord Commonwealth v. Hagan,* 539 Pa. 609, 613, 654 A.2d 541, 543 (1995). The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Dellavecchia,* 725 A.2d 186, 188 (Pa.Super.1998) (*en banc*). The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the com-

---

**2.** Respectively, 18 Pa.C.S.A. §§ 3701, 901, 2702, 3502, 3503, 3921, 901, 907, and 6108.

**3.** *Id.,* §§ 2701 and 2705.

bined circumstances. *Commonwealth v. Seibert*, 424 Pa.Super. 242, 622 A.2d 361, 363 (1993), *appeal denied*, 537 Pa. 631, 642 A.2d 485 (1994) (citing *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977) and *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943)).

¶ 6 The proper application of this standard requires us to evaluate the entire trial record, and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence. *Commonwealth v. Harper*, 485 Pa. 572, 576, 403 A.2d 536, 538 (1979). Our law is crystal clear that the trier of fact, in passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence presented. *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992). The Superior Court may not reweigh the evidence and substitute our judgment for that of the finder of fact. *Commonwealth v. Vetrini*, 734 A.2d 404, 407 (Pa.Super.1999). If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Wood*, 432 Pa.Super. 183, 637 A.2d 1335, 1343 (1994).

¶ 7 Appellant's first argument concerning evidentiary sufficiency is divided into two parts: allegations that the Commonwealth did not establish (1) that Appellant committed either robbery or theft with regard to Mrs. Bryant; and (2) that Appellant committed the crimes of simple assault or REAP against either the Reverend or Mrs. Bryant. With regard to the first contention, the Crimes Code states that a person is guilty of "robbery" if, in the course of committing a theft, he or she:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

18 Pa.C.S.A. § 3701(a)(1). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." *Id.* § 3701(a)(2). A person commits the crime of "theft by unlawful taking" if he unlawfully takes the movable property of another with intent to deprive him thereof. *Id.*, § 3921(a). *See Commonwealth v. Stevens*, 237 Pa.Super. 457, 352 A.2d 509, 513 (1975) (theft is a lesser included offense of robbery).

¶ 8 In this context, Appellant first complains that the evidence did not demonstrate that Mrs. Bryant feared for her own safety, or that she had any reason for being concerned that she might be at risk. As the learned Trial Judge correctly noted in his opinion, the Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). *Commonwealth v. Scott*, 246 Pa.Super. 58, 369 A.2d 809, 813 (1976). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. *Id.* For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury." *Commonwealth v. Ross*, 391 Pa.Super. 32, 570 A.2d 86, 87 (1990), *appeal denied*, 527 Pa. 644, 593 A.2d 417 (1990). The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of "serious bodily injury." *Commonwealth v. Thomas*, 376 Pa.Super. 455, 546 A.2d 116, 119 (1988). A factfinder is entitled to infer that a victim was in

mortal fear when a defendant visibly brandished a firearm. *Id.*

¶ 9 Judge Lerner has explained that he found the evidence sufficient to sustain the robbery conviction on the following grounds:

In the instant case, the evidence shows that appellant, armed with a gun, viciously beat the Bryants' foster-son in their presence all the while demanding money. Appellant then attempted to kick down the Bryants' bedroom door and demanded money from them as well. Although appellant did not verbally threaten them, the Bryants nonetheless feared for their own safety and for that of their foster-son. The Bryants complied with appellant's demands by opening the door, and appellant thereafter took $55 from Mae Bryant.

Trial Court Opinion at 5. We agree with the Trial Court's assessment.

¶ 10 We note additionally, that testimony of record indicates that Appellant was wearing a black ski mask and visibly possessed a handgun when the Bryants initially looked outside their bedroom door. N.T. Trial, 6/23/98, at 69. Mrs. Bryant observed Appellant outside her bedroom door, armed and beating her foster son. *Id.* at 71. She initially stood still "in shock" at the sight of a gun wielding, masked man pistol whipping her foster-son at a distance of less than five feet from where she stood. *Id.* at 69–73. The Bryants retreated inside their bedroom, and Appellant began kicking on the door. *Id.* at 73. Eventually, the Bryants opened the door and offered money in the hopes that Appellant would stop beating their foster-son and would go away and leave the family alone. *Id.* at 74–75. The police arrived shortly after Appellant actually took the money from Mrs. Bryant. *Id.* at 76. Police officer Tracey Brooks testified that the seventy-five year old Mrs. Bryant was crying "hysterically" when the officers arrived. *Id.* at 8, 10, 21, 82. Under these circumstances, we conclude that the Trial Court's determination was warranted, and

that the evidence was sufficient to sustain both the robbery and theft convictions against Appellant as to Mrs. Bryant.

¶ 11 A person is guilty of simple assault if he attempts by physical menace to put another in fear of imminent serious bodily injury. 18 Pa.C.S.A. § 2701(a)(3). We have explained previously the reasons why we find the evidence sufficient to conclude that Appellant placed Mrs. Bryant in fear of imminent serious bodily injury, thus sustaining the conviction for simple assault with regard to her. In addition to the evidence already discussed, we note that Rev. Bryant was seventy-eight years old at the time of this incident. N.T. Trial, 6/23/98, at 82. He testified that his wife actually handled the situation better than he did, and that she stayed "calmer" during the emergency than he was able to remain. *Id.* at 71–72. Notwithstanding Rev. Bryant's statement that he was *more* upset than his wife, Officer Brooks repeatedly characterized Mrs. Bryant as "hysterical." *Id.* at 8, 10, 21. Rev. Bryant explicitly testified that he believed Appellant intended to kill his entire family. *Id.* at 74. We conclude that this evidence adequately sustains the conviction for simple assault with regard to Rev. Bryant.

¶ 12 A person commits the crime of recklessly endangering another person if he engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.A. § 2705. Our law defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301; *Commonwealth v. Rochon*, 398 Pa.Super. 494, 581 A.2d 239, 243 (1990). To sustain a conviction under section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. *In re Maloney*, 431 Pa.Super. 321, 636 A.2d 671, 674

(1994). Danger, not merely the apprehension of danger, must be created. *Id.* The mens rea for recklessly endangering another person is "a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Peer*, 454 Pa.Super. 109, 684 A.2d 1077, 1080 (1996). Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a factfinder may conclude that a defendant proceeded with conscious disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death. *Id.* at 1080–1081.

¶ 13 In the present case, the evidence discloses that Appellant's gun was loaded throughout the incident in question, and that the weapon was operable. N.T. Trial, 6/23/98, at 15, 84. Appellant was not content to merely wave the gun about and threaten the Bryants and their foster-son during the course of the robbery. He used the weapon to pistol whip Thomas Edwards, thereby subjecting the gun to the danger of accidental misfiring. Rev. and Mrs. Bryant were less than five feet away during this pistol whipping. *Id.* at 69–70. Moreover, Appellant was still carrying the gun when he took the money from Mrs. Bryant. *Id.* at 72, 75. Appellant then "went right back to work" on Mr. Edwards, beating him with the gun. *Id.* at 75. *See id.* at 12–13 (testimony of police officer who observed Appellant using the firearm as a bludgeon). Under these conditions, we have no hesitancy in affirming the Trial Court's determination that Appellant was guilty of recklessly endangering the Bryants as well as Mr. Edwards.

¶ 14 Next, Appellant contends that the evidence was insufficient to support the burglary and criminal trespass convictions on the grounds that he was licensed and privileged to enter the premises by an agreement with Roosevelt Davis, Mrs. Bryants' grandnephew. Appellant cites to his grandmother's stipulated testimony that she saw Appellant in the company of Mr. Davis on the morning of the events in question. He urges us to find this an adequate basis to establish that they were associates and that Mr. Davis gave Appellant permission to enter the Bryants' home, where he resided at the time. Appellant's Brief at 17. Appellant also contends that Mr. Davis offered to intervene during the conflict between Appellant and Mr. Edwards. *Id.* (Appellant concedes that this intervention "more likely than not" consisted of warning Appellant that the Bryants were calling the police.) *Id.*, n. 17. Appellant also notes that Mr. Davis assisted him by trying to prevent the Bryants from calling the police and by trying to obstruct the police officers from entering the premises. *Id.* at 17–18.

¶ 15 A person is guilty of burglary if he enters a building or occupied structure with the intent to commit a crime therein, unless he is licensed or privileged to enter. 18 Pa.C.S.A. § 3502(a). Pursuant to this statute, a person does not commit burglary if he is licensed or privileged to enter the premises, even if he intends to commit a crime. *Commonwealth v. Majeed*, 548 Pa. 48, 52, 694 A.2d 336, 338 (1997). A person commits the crime of criminal trespass "if, knowing that he is not licensed or privileged to do so ... breaks into any building or occupied structure...." 18 Pa.C.S.A. § 3503(a)(1)(ii). Our law defines "breaks into" as gaining entry by force breaking, intimidation, unauthorized opening of locks, or by using an opening not designed for human access. *Id.* § 3503(a)(3). The element of "license" or "privilege" is similar to that of consent. *Commonwealth v. Starkes*, 268 Pa.Super. 108, 407 A.2d 853, 856 (1979).

*License* means "1: permission to act ... 3b: authority or permission of one having no possessory rights in land to do something on the land which would otherwise be unlawful or a trespass ..."; *privilege* means "1a: a right or immunity as a peculiar benefit, advantage or favor; special enjoyment of a good or exemption from an evil or burden; a peculiar or personal advantage or right

esp. when enjoyed in derogation of common right: PREROGATIVE."

*Id.* (ellipses and emphasis in original). Both license and privilege can be vitiated if induced by force, duress or deception of a kind sought to be prevented by the law defining the offense. *Id.*; 18 Pa.C.S.A. § 311(c)(4).

■ ¶ 16 Judge Lerner has explained why he finds the evidence sufficient to sustain the convictions for both burglary and criminal trespass in the following terms:

> There is no doubt that appellant had neither license nor privilege to enter the victims' home. Thomas Edwards testified that appellant forced his way into the house. Appellant, who was wearing a ski mask in a vain attempt to conceal his identity, immediately struck Edwards in the head upon his answering the door. Appellant then continued to beat Edwards and demanded money. These facts establish appellant's unlicensed status beyond a reasonable doubt, and they also show that appellant forcibly entered the victim's home with the contemporaneous intent to commit the crimes of robbery and/or theft. Moreover, appellant's use of his [grand-]mother's testimony to put forth the 'defense theory' that he was admitted into the residence by a third party was completely unpersuasive. Accordingly, appellant was properly convicted of burglary and criminal trespass.

Trial Court Opinion at 6.

■ ¶ 17 As previously stated, the factfinder is free to believe all, part or none of the evidence. *Valette, supra.* Resolving contradictory testimony and questions of credibility are matters for the factfinder. *Id.* Judge Lerner has explicitly stated that he found the defense evidence unpersuasive in light of the credible evidence introduced by the Commonwealth. We conclude that Judge Lerner's factual findings

are adequately supported by evidence of record, and we find no basis on which we could disagree with his determination that the evidence was sufficient to sustain these two convictions.

■ ¶ 18 Appellant's final argument is that the Commonwealth failed to show that he carried a firearm on public streets or public property in Philadelphia in violation of the Pennsylvania Uniform Firearms Act (PUFA). A person violates section 6108 of PUFA if he carries a firearm, rifle or shotgun at any time upon the public streets or upon any public property in the City of Philadelphia, unless he has a license to do so or is exempt from the licensing requirements of the Act. 18 Pa. C.S.A. § 6108. Lack of a license is not an element of this statutory provision. *Commonwealth v. Ford*, 315 Pa.Super. 281, 461 A.2d 1281, 1287 (1983).[4] As with any crime, the factfinder may infer guilt from the totality of the circumstances, so long as the evidence reasonably supports the factfinder's conclusion. *Id.* The factfinder's determination that a defendant carried a weapon on a public street in Philadelphia will be affirmed if the evidence of record reasonably supports this conclusion. *Id.*

¶ 19 Appellant does not contend that he had a carry permit, or that he was not required to have such a license. Rather he argues that it is "plausible" that he managed to import his weapon to the Bryants' home by means other than carrying it on a public street. He hypothesizes that he "might have" carried the weapon through the neighbors' back yards, or that Mr. Davis "might have" given him the weapon when he reached the Bryants' home. We find these contentions to be specious.

¶ 20 First, the evidence of record which the Trial Court found credible indicates that Mr. Davis was nowhere near the first floor entryway of the Bryant residence

---

4. We note, however, that the Commonwealth did present stipulated evidence that Appellant was not licensed to carry firearms on the date of the incident in question. N.T. Trial, 84–85.

when Appellant arrived, and that he was never in a position to give Appellant a weapon. *See* N.T. Trial, 6/23/98, at 42–45, 49, 53, 62 (testimony of Mr. Edwards that he was alone on the first floor when he answered the knocking at the front door, that Roosevelt Davis was nowhere around, that Appellant was alone, and that Appellant immediately hit him on the head with his gun when the door opened). Thus, we conclude that the certified record does not support Appellant's theory that he received his weapon from Mr. Davis after arriving at the Bryants' front door.

¶ 21 We also find no support in the record for Appellant's assertion that he "might have" traveled to the Bryants' home via backyards. The certified record indicates that the residence in question is a "typical" Philadelphia row house. *Id.* at 8 (testimony of Officer Tracey Brooks). The evidence shows that Appellant approached the row house from the front, which faces East Seventy-fourth Street, and entered the home via the front door. *Id.* at 42–45, 49, 53, 62. Furthermore, Appellant struck Mr. Edwards with his gun butt as he stood on the Bryants' front stoop, before he entered the home. *Id.* The Trial Court determined that this circumstantial evidence was sufficient to support the reasonable inference that Appellant traveled at least some distance on a public street in order to be able to access the front entryway of the Bryants' home. Trial Court Opinion at 7. We agree with the Trial Court's determination, and find no evidence of record that would support a contrary conclusion. We therefore affirm Judge Lerner's ruling on this point.

¶ 22 Judgment of sentence affirmed.