J.A22044/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :      IN THE SUPERIOR COURT OF
                                          :              PENNSYLVANIA
                   Appellee      :
                                          :
                 v.            :
                                          :
                                          :
ANDREW S. BAUMGARTNER,        :
                                          :
                   Appellant      :       No. 2250 MDA 2013

Appeal from the Judgment of Sentence September 12, 2013
In the Court of Common Pleas of Dauphin County
Criminal Division No(s).: CP-22-CR-0000791-2012

BEFORE: PANELLA, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED OCTOBER 29, 2014**

Appellant, Andrew S. Baumgartner, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, challenging the weight of evidence for his conviction of robbery.[1] We affirm.

Because Appellant's issue on appeal concerns the weight of the Commonwealth's witnesses' testimony at trial, we review it in detail. We also note that Appellant appeared *pro se* at the jury trial with stand-by counsel.

Nicholas Bowshot testified to the following. On the morning of

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

November 17, 2011, he was getting into his car when he came across Appellant, whom he had known for years. Appellant said he wanted to get marijuana, and Bowshot called William Foster and requested "a quarter pound" of marijuana for Appellant. N.T. Jury Trial, 9/10-12/13, at 130. Bowshot drove Appellant to Foster's house. Upon parking outside, Appellant told Bowshot "he was going to rob" Foster, while lifting his hoody sweatshirt and showing what looked like a firearm. *Id.* at 135-37.

Bowshot further testified to the following. He and Appellant entered Foster's home and Foster handed Appellant four bags of marijuana. Appellant put the marijuana in his back pocket and told Bowshot "to go to the car to get the money." *Id.* at 141. Bowshot went to the vehicle and looked in the glove box, where he had seen Appellant "put something." *Id.* at 144. When he turned around, Appellant was walking towards him, while Foster and his fiancée Kelsey Hatt were on the porch, "look[ing] scared."[2] *Id.* at 147. Appellant entered Bowshot's vehicle, took the gun from his waistband and placed it on his lap, and told Bowshot to "F-ing go now." *Id.* at 149. Bowshot drove Appellant five to ten minutes and let him out of the car. Appellant threw a bag of marijuana to Bowshot and said, "This is for your troubles." *Id.* at 150. On cross-examination, Bowshot stated he had pending charges of robbery and conspiracy for his involvement. *Id.* at 161.

---

[2] Bowshot testified that he could not completely remember whether both Foster and Hatt were on the porch, or if Foster was on the porch while Hatt remained inside the screen door. N.T. at 147.

When asked why he was testifying for the Commonwealth, Bowshot replied, "Honestly, in the hopes of getting a better sentence. I wasn't promised anything." *Id.* at 161. Bowshot also denied calling Foster on November 15th "to set [up the sale] for the 17th." *Id.* at 157.

At trial, William Foster testified to the following. On November 15, 2011, he received a phone call from Bowshot asking for marijuana for a friend. *Id.* at 50. Although Foster and Appellant "grew up about ten houses away" from each other and Foster had seen Appellant before, Foster did not know Appellant personally. *Id.* at 52, 56. Two days later, on the morning of November 17th, Bowshot again called and said that he and his friend, Appellant, were on their way to his house.[3] Foster's fiancée, Kelsey Hatt, was upstairs. Upon entering Foster's house, Appellant directed Bowshot to retrieve the money from the car. After Bowshot left the house, Foster gave Appellant one of the four bags of marijuana to examine. Appellant examined the marijuana and said he would take all of it, and Foster gave him the remaining three bags and said the price was $1,600. Appellant took a gun with his left hand, put it to Foster's nose for a minute and a half to two minutes, and said "It's all part of the game." *Id.* at 61-63, 65. When Hatt appeared on the stairs, Appellant "put the gun to his side and tried to cover it with his sweater," and walked out. *Id.* at 63-64. Foster testified that the

---

[3] Foster testified that subsequently, there was a knock at his door and then a second call from Bowshot to tell Foster they were there. N.T. at 54-55.

gun was a nine millimeter, was real, and had a metallic sheen. *Id.* at 65. Foster denied having any guns in the house or displaying any gun to Appellant. *Id.* at 66. Foster and Hatt followed Appellant outside, and Foster saw Appellant "adjusting his firearm on the left side." *Id.* at 71.

Foster further testified to the following. As a result of the investigation of this matter, he was charged with possession of drug paraphernalia, possession of marijuana, and falsifying a police report. *Id.* at 75. The false report was "that there was a box that had the hundred dollars in it and .. . 3.5 grams of marijuana." *Id.* at 74. Foster gave this false information "[b]ecause in the beginning [he] didn't want to cooperate with the police[ and] was afraid" because he was selling marijuana and there was a gun involved. *Id.*

At trial, Kelsey Hatt testified to the following. On November 17, 2011, she was upstairs at home and heard voices when people entered. *Id.* at 194. She then became concerned because she did not hear any activity downstairs, and the "complete silence . . . struck [her] as odd." *Id.* at 197. Hatt put a steak knife in her pocket and went downstairs. At the bottom of the stairs she saw "Appellant sticking something [black and shiny] in his pants," which she thought was a gun. *Id.* at 199. Hatt said, "What's going on?" *Id.* at 201. Appellant said, "It's all part of the game. . . . Are we cool? Are we cool?" *Id.* at 201. Foster replied, "No, this is messed up." *Id.* After Appellant left, Hatt and Foster followed him out the front door.

Hatt testified that she was scared and hysterical from the time she reached the downstairs. *Id.* at 201, 206, 207, 209. After Appellant and Bowshot drove away, she and Foster both started crying. *Id.* at 209. Appellant walked out of the house to Bowshot's car and adjusted something on his left side. Hatt initially told police the amount of marijuana was 3.5 grams, "significantly less than" the actual amount, because this amount was "a cut" and she believed she would be in less "trouble for saying that amount." *Id.* at 212.

At trial, Appellant testified to the following. On November 17, 2011, while walking, he saw Nicholas Bowshot and asked him for a ride. *Id.* at 272. Appellant asked where he could get marijuana, and Bowshot replied he would get it from Foster and that the marijuana would cost $1,200. Appellant showed Bowshot the $1,200 he had and Bowshot called Foster. "[O]n the way up there," Bowshot told Appellant that he was "selling a lot of weed for" Foster and Foster was going to "break [him] off." *Id.* at 274. Upon entering Foster's house, Bowshot had the money. When Foster gave Appellant one bag of marijuana, and Appellant told Bowshot to give Foster the money. *Id.* at 273. Bowshot patted his pockets "like, 'Oh, where's it at?'" *Id.* at 274. Although Appellant knew the money was in Bowshot's pocket, Appellant said, "You left it in the car." *Id.* Bowshot went outside and Foster gave Appellant the three other bags of marijuana, which Appellant put in his pocket. Appellant asked what was taking Bowshot so

- 5 -

long, Foster said he did not know, and Appellant walked toward the door. At this point, Hatt came downstairs and she and Appellant exchanged greetings. They all went outside, and Bowshot "was just turning from inside the car to look out" because, perhaps, he heard them coming out. *Id.* at 275. Bowshot said he did not know where the money was, but Appellant knew it was in Bowshot's pocket. Appellant entered the car and asked, "[W]hat's going on." *Id.* at 275. Bowshot asked if Appellant had the marijuana; when Appellant said yes, Bowshot said, "[F—] it, we just gonna pull off." *Id.* Appellant said, "Cool," and Bowshot drove away. *Id.* at 275-76. Appellant admitted that he did not pay for the marijuana but denied having a firearm. *Id.* at 276, 278, 279.

On September 10, 2013, the jury found Appellant guilty of robbery, conspiracy[4] to commit theft, and persons not to possess a firearm.[5] On September 12, 2013, the court imposed an aggregate sentence of five to ten years' imprisonment.[6]

On September 19, 2013, Appellant timely filed a post-sentence motion

---

[4] 18 Pa.C.S. § 903(c).

[5] 18 Pa.C.S. § 6105(a)(1).

[6] The court imposed the following sentences, all to run concurrently: five to ten years' imprisonment for robbery, two years for conspiracy to commit theft, and one and a half to three years for persons not to possess a firearm.

challenging the weight of evidence for robbery.[7]  On December 6, 2013, the

trial court denied the motion.  Appellant timely filed a notice of appeal and a

court-ordered Pa.R.A.P. 1925(b) statement.  The trial court filed an opinion

pursuant to Pa.R.A.P. 1925(a).

> Appellant raises the following issue for our review:
>
> > Whether the trial court abused its discretion in denying
> > Appellant's post-sentence motion because the jury verdict
> > was so contrary to the weight of the evidence as to shock
> > one's sense of justice where all relevant witnesses gave
> > inconsistent, conflicting, and false testimony, and the
> > codefendant admitted that he was testifying in order to
> > receive a more favorable sentence?

Appellant's Brief at 5.[8]  Appellant contends the testimony of Nicholas

Bowshot, William Foster, and Kelsey Hatt was so unreliable and

contradictory that the verdict was purely conjecture and without reason.

Appellant cites their allegedly inconsistent testimony regarding the

description of the gun, from which side of his pants he allegedly retrieved

the gun, which hand held the gun, and whether he had a gun at all.

Appellant maintains that police never recovered a gun.  He further argues

Bowshot testified in order to receive a more favorable sentence on his own

pending charges.  Appellant also cites the fact that Foster and Hatt initially

---

[7] In his post-sentence motion, Appellant also raised a weight of evidence argument for persons not to possess a firearm.  However, Appellant has not challenged it here.

[8] Appellant preserved the weight of the evidence issue because he previously raised the issue in his post-sentence motion.  **See Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012).

provided false information to the police about the amounts of marijuana and money involved. We find no relief is due.

Our standard for reviewing a weight of the evidence claims is well established:

> [O]ur role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.
>
> "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law."

*Commonwealth v. Kane*, 10 A.3d 327, 332-33 (Pa. Super. 2010) (citations omitted). "As an appellant court, we cannot substitute our judgment for that of the finder of fact." *Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa. Super. 2007).

Appellant was convicted under the following subsection of the robbery statute:

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> \* \* \*
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

J. A22044/14

*See* 18 Pa.C.S. § 3701(a)(1)(ii).

> For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury." The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of "serious bodily injury." A fact finder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm.

*Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000) (citations omitted). "Moreover, the statute instructs that in determining the grade of the felony we focus on the intent or act of the defendant and not the subjective state of mind of the victim." *Commonwealth v. Thomas*, 546 A.2d 116, 119 (Pa. Super. 1988) (*en banc*).

In the instant case, the trial court opined:

> Although discrepancies existed as to which hand [Appellant] held the gun, and as to whether the gun was plastic and dull (testimony of Mr. Bowshot), or shiny and metal (testimony of Mr. Foster and Ms. Hatt), the jury evidently chose to believe their testimony that [Appellant] had a gun nonetheless. Furthermore, although Mr. Bowshot testified that the gun looked "[k]ind of" dull and plastic, he also testified that he was not familiar with pistols or firearms. Ms. Hatt also admitted that she was not familiar with guns. Mr. Bowshot also testified that he was not sure what side of [Appellant's] body the gun was on. However, Mr. Bowshot, Mr. Foster and Ms. Hatt all unequivocally testified that they were sure that [Appellant] had a gun.

Trial Ct. Op., 12/06/13, at 4 (citations to trial transcript omitted).

Furthermore, Foster and Hatt's actions of following Appellant outside is not determinative, as the robbery statute focuses on Appellant's actions and

- 9 -

intent, and not Foster's and Hatt's subjective states of mind. ***See Thomas***, 546 A.2d at 119. Additionally, Hatt testified that she was scared and hysterical during the incident, and that after Appellant left, she and Foster cried. Both Foster and Hatt admitted to providing false information to the police due to concerns they would be in trouble because of the marijuana and gun. Finally, the mere fact that a gun was brandished was sufficient for the jury to infer that Foster and Hatt were in mortal fear. ***See Hopkins***, 747 A.2d at 914. With regards to Bowshot's motivation for testifying, he stated "wasn't promised anything." N.T. at 161. The jury was "free to believe all, part or none of" the Commonwealth's witnesses' testimony and to determine their credibility. ***See Kane***, 10 A.3d at 332.

Finally, we consider Appellant's contention that Foster and Hatt never called the police themselves, but instead called their friend Stewart, which "led to a confrontation" in which "Stewart pull[ed] a gun on Bowshot." Appellant's Brief at 16. Appellant offers no explanation of how any confrontation between Stewart and Bowshot is relevant to his issue on appeal, and therefore no relief is due on this claim.

We hold the trial court did not abuse its discretion in denying relief on Appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2014