J-A03022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ESET CATCHINGS | : | |
| | : | |
| Appellant | : | No. 698 EDA 2021 |

Appeal from the Judgment of Sentence Entered December 4, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004750-2019

BEFORE: STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.: **FILED FEBRUARY 25, 2022**

Appellant, Eset Catchings, appeals from the Judgment of Sentence entered in the Court of Common Pleas of Philadelphia County after the court convicted her of Third-Degree Murder and Possession of an Instrument of Crime ("PIC"). Appellant asserts that she acted in self-defense and, therefore, her convictions are contrary to the weight of the evidence. After careful review, we affirm.

On January 18, 2019, Appellant stabbed and killed her roommate and sexual partner, Rodney Bond ("Victim"). At the time, Victim was also in a romantic relationship with Aaron Smith.

On the date of the murder, Appellant and Victim were engaged in a physical altercation at their home. In an attempt to extricate himself from the altercation, Victim contacted Smith and asked Smith to come pick him up. When Smith arrived, Appellant and Victim were "fighting, punching, grabbing,

[and] shoving" each other on the front porch. N.T. Trial, 9/21/20, at 30. Smith broke up the fight, at which point Appellant returned inside. Shortly after, Victim returned inside to pack clothing and leftover food to take to Smith's.

The argument between Victim and Appellant continued during the packing process. At some point, Victim walked from his upstairs bedroom, down the steps, and toward the front door to leave. Appellant followed, "attempting to reach over Smith and punch [Victim]. Smith intervened to keep [Appellant] separated from [Victim]." Trial Ct. Op., 6/29/21, at 3. Then, as Victim walked toward the front door, Appellant jumped on his back and stabbed him in the chest with a steak knife, killing him.

When police arrived at the scene, they found the front door ajar and a bookbag and leftover food container on the front porch. While processing the crime scene, investigators found a steak knife with a black handle on the living room floor. Testing revealed that the knife contained Victim's blood and Appellant's DNA. Testing also showed that Victim's fingernail clippings did not contain Appellant's DNA. Additionally, investigators collected swabs of Appellant's blood from the walls and floors of the living and dining rooms, the exterior of the front door, and the floor of Appellant's bedroom.

Dr. Victoria Sorokin of the Philadelphia Medical Examiner's office conducted an autopsy on Victim. Dr. Sorokin concluded that Victim died from a stab wound to the chest. The wound was five and a half inches deep, angled downward, and was three quarters of an inch away from Victim's heart. Victim also had a two-inch-deep stab wound to the right thigh.

Appellant's bench trial began on September 21, 2020. Appellant and the Commonwealth stipulated to the autopsy results, and the results of the forensic testing on the steak knife and Appellant's fingernail clippings. The Commonwealth presented testimony from five witnesses, including Philadelphia Police Officer Clyde Frasier, who testified to the blood splatter testing results. Additionally, Smith testified on behalf of the Commonwealth regarding his first-hand account of Victim's killing; his testimony was consistent with the above-stated facts.

Appellant testified on her own behalf. In sum, she averred that she was asleep in bed on the evening of January 18, 2019, when Victim returned home from work. Victim became angry with Appellant because Appellant did not purchase juice at the grocery store. Victim "yanked" Appellant out of her bed, down the stairs, and outside, where he punched and kicked her in the face. When Appellant got away and ran back inside, Victim went inside after her and began to choke her. Victim found a steak knife nearby and used it to stab Victim in the chest in self-defense. *See* N.T. Trial, 9/22/20, at 18-35.

The trial court did not find Appellant's testimony credible. *See id.* at 101-02 (calling Appellant's testimony "pretty farfetched" and concluding that Appellant's "story just doesn't make sense to the court."). It specifically found that Appellant "was the aggressor in the case" and, therefore, that she was not acting in self-defense when she stabbed Victim. *Id.* at 102. Based on these findings, the court convicted Appellant of the above crimes. On December 4, 2020, the court sentenced Appellant to 15 to 30 years' incarceration.

Appellant filed a timely post-sentence motion seeking a new trial based, *inter alia*, on her assertion that the verdict was contrary to the weight of the evidence. The trial court denied Appellant's motion, Appellant filed a timely Notice of Appeal, and both she and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that the trial court's finding that she did not act in self-defense when she killed Victim is contrary to the weight of the evidence.[1] Appellant's Br. at 39-66. Appellant asserts that she was "the victim of an unprovoked attack" and "had to stab [Victim] to get him off of her." **Id.** at 43, 50. In support, Appellant credits her own testimony that she was blameless in the altercation with Victim, and discredits Smith's testimony because it "makes no sense[.]" **Id.** at 47. **See also id.** at 46 (recognizing a "conflict in the testimony" between Appellant and Smith and urging this Court to discredit Smith's testimony because it "makes almost no sense at all."). Appellant ultimately concludes that, since the weight of the evidence proved her self-defense claim, the court should have found her not guilty of Third-Degree Murder and PIC. **Id.** at 43, 64.

_____

[1] Appellant also purports to challenge the sufficiency of the evidence. In support, Appellant argues that the trial court erred by crediting the Commonwealth's evidence, proving that Appellant was the aggressor in her altercation with Appellant, over Appellant's testimony that she acted in self-defense. **See** Appellant's Br. at 39-57. This argument goes to the weight of the evidence, not its sufficiency. **See Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000) (delineating distinctions between claims challenging the sufficiency and weight of the evidence). As a result, we address this issue a as a challenge to the weight of the evidence.

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the factfinder." ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the fact-finder. ***Talbert***, ***supra*** at 546.

Further, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. ***Id.*** at 545-46. "In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." ***Id.*** (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (emphasis omitted).

Appellant's challenge involves her claim of self-defense. To prove self-defense, the individual must have (1) reasonably believed that force was necessary to protect herself against death or serious bodily injury; (2) been free from fault in provoking the altercation that culminated in the killing; and (3) not violated any duty to retreat. ***Commonwealth v. Miller***, 172 A.3d

- 5 -

632, 640 (Pa. Super. 2017). Once a defendant claims self-defense, the Commonwealth bears the burden of disproving it and can do so by, *inter alia*, proving that the defendant was not free from fault in provoking or continuing the altercation. ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012).

In its Rule 1925(a) Opinion, the trial court reiterated its finding that Appellant's testimony lacked credibility. Trial Ct. Op. at 12. In reviewing its credibility finding, the court explained that the Commonwealth's evidence disproved Appellant's self-defense claim:

> In this case, the evidence presented by the Commonwealth and accepted by the [c]ourt was sufficient to sustain the verdict and to disprove [Appellant's] claim of self-defense beyond a reasonable doubt. The testimony of Aaron Smith, along with the corroborating forensic evidence established that [Appellant] initiated and escalated a physical altercation despite [Victim's] attempts to leave the house and end the argument. The evidence presented by the Commonwealth contradicted [Appellant's] testimony that [Victim] had been choking her at the moment of the stabbing.

*Id.* at 9. The court concluded that Appellant was the aggressor in the altercation with Victim and, consistent with Smith's testimony and the forensic evidence, Appellant stabbed Victim as Victim attempted to leave their home:

> The [c]ourt [] credited the evidence presented by the Commonwealth [to conclude that] 'what makes more sense is this happened at the door. That is where the blood spatter is, that [Appellant] was on the back of [Victim], that makes sense with where the wound is and that [Appellant] was the aggressor in this case.'

- 6 -

*Id.* at 12. Since Appellant was the aggressor in the altercation with Victim, she was not free from fault in provoking or continuing the altercation and, as a result, Appellant's self-defense claim failed. *Id.* at 9, 12.

The record supports the trial court's finding. Smith's testimony established that Appellant jumped on Victim's back and stabbed Victim as Victim attempted to leave their home and extricate himself from the conflict. N.T. Trial, 9/21/20, at 35-36 (testifying that Victim was "trying to get out the door and [Appellant] jumped on his back"); 36 (Appellant "looked like she was reaching around, punching [Victim]" while on his back); 38-39 (once Appellant got off Victim's back, Victim "started walking, stumbling toward the dining room and he fell."); 39 (once Victim fell, Smith "saw the blood and [] called the police."). The forensic evidence, particularly Victim's blood on the exterior of the front door, supported Smith's testimony that Appellant stabbed Victim as Victim was attempting to leave the home. *Id.* at 111. The court found that Appellant's contrary testimony lacked credibility. *Id.* at 101-02.

Appellant essentially asks us to usurp the fact-finder's credibility determination and credit her testimony over the Commonwealth's evidence, particularly Smith's testimony, to find that she killed Victim in self-defense. We cannot and will not do so. *See Talbert*, *supra* at 546. We discern no abuse of discretion in the trial court's conclusion the verdict was not against the weight of the evidence. As a result, we affirm.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2022