J-S02044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HERIBERTO MONTANEZ, JR. | : | |
| | : | |
| Appellant | : | No. 1055 MDA 2022 |

Appeal from the Judgment of Sentence Entered June 3, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004793-2020

BEFORE: PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                **FILED: MARCH 10, 2023**

Appellant, Heriberto Montanez, Jr., appeals from the June 3, 2022 Judgment of Sentence of 16 to 32 years of incarceration imposed following his jury conviction of Involuntary Deviate Sexual Intercourse ("IDSI"), Unlawful Contact with a Minor, Indecent Assault, and Corruption of Minors.[1] Appellant challenges the weight of the evidence in support of his convictions. After careful review, we affirm.

The trial court set forth the relevant facts as adduced at Appellant's jury trial as follows:

> [Victim], born on February 23, 2012, was eight (8) years old and in third grade at the time of the alleged incident in question. [Victim] was spending the night at her paternal grandmother's home. She and her brother ["Brother"], were sleeping together on an air bed in the second bedroom. Also present in the home

---

[1] 18 Pa.C.S. §§ 3123(b), 6318, 3126(a)(7), and 6301(a)(1)(i), respectively.

was [Appellant], her grandmother's boyfriend[.] When [Victim] went to sleep, [Appellant] was in her grandmother's room.

[Victim] was sleeping in her night clothes, a shirt and shorts, and underwear. She was sleeping face down when she felt the covers being placed over her by [Appellant], who had climbed onto the bed. [Appellant] pulled down [Victim's] shorts and underwear, and she could hear him pull his own pants down. He then began kissing [Victim's] "bottom."

[Appellant] continued touching [Victim]. She described that he "put his stuff inside" her. She clarified that "stuff" meant [Appellant's] "balls," and further described the body part as that which boys use to "pee." She testified that [Appellant's] "stuff" touched the outside of the "hole" of her "bottom" but did not penetrate it. She also testified that [Appellant's] "stuff" touched near the outside of her "pineapple," her word for the body part from which girls "pee," and towards the inside of it.

While the touching occurred, [Victim] tried to wake [Brother] by pinching him. [Brother] felt the pinching while he slept but did not fully wake up until [Appellant] had already left the room. [Victim] told [Brother] that [Appellant] had raped her. She also told him that [Appellant] had left and gone to the bathroom, from where she could hear the water running. [Brother] testified that he also heard the water running in the bathroom. [Victim] heard [Appellant's] footsteps returning to her grandmother's room.

At some point, a discussion ensued concerning whether what [Victim] had experienced was real or a dream. [Brother] testified that he was the first person to tell [Victim] that she must have had a dream. [Victim] confirmed that she initially told [Brother] that it had been a dream, although it is unclear if this was before or after his own assessment that she had been dreaming. [Victim] and [Brother] went to get their grandmother and she ultimately came to their room with [Appellant]. [Victim] recalled that [Brother] told their grandmother that [Victim] had a dream of [Appellant] raping her. [Brother] recalled that, after being advised of the allegation, it was their grandmother who stated it must have been a dream.

Regardless of the precise timing of the various statements, [Victim] testified that she clarified to her grandmother that it really [had] happened. In response to this accusation, [Appellant] responded "why didn't you tell me to stop." [Victim] explained that she was certain she had not been dreaming because she could

feel the assault as it was occurring, and because the next day she experienced bleeding from her "pineapple." There was also blood on her underwear.

[Victim's Mother] came to the house the following day. [Victim's] grandmother informed her that [Victim] had a dream that [Appellant] had done something to her. She then summoned [Victim] to speak to her and [Mother]. In response to her grandmother's statement, "you had a nightmare, right?", [Victim] told her mother it was only a nightmare.

Approximately one (1) to two (2) months later, [Mother] was speaking with [Victim] and asked her if she keeps any secrets from her. [Victim] began to cry and told her what [Appellant] had done to her and that it had not been a dream.

Trial Ct. Op., 9/6/22, at 2-4 (citations to the notes of testimony omitted).

On March 9, 2022, the jury convicted Appellant of the above charges and acquitted Appellant of Rape of a Child.[2] On June 3, 2022, the court sentenced Appellant to a term of 16 to 32 years of incarceration.

Appellant filed a post-sentence motion alleging that the verdict was against the weight of the evidence and that the jury's inconsistent verdict required an arrest of judgment on constitutional grounds. On July 18, 2022, the trial court denied Appellant's post-sentence motion.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

Whether the trial court erred in denying the post-sentence motion for an arrest of judgment as against the weight of the evidence, when [Victim's] testimony was so incredible to believe, the circumstances surrounding its occurrence and disclosure shocking the [conscience], particularly in light of the inconsistent verdict

_____

[2] 18 Pa.C.S. § 3121(c).

- 3 -

between [R]ape of a [C]hild and [IDSI], such that [Appellant] must be afforded a new trial?

Appellant's Brief at 6.

Appellant challenges the trial court's denial of his weight of the evidence claim. In support, Appellant argues that the trial court erred "when it allowed the contradictory, dream[-]like testimony of [Victim] to carry the Commonwealth's burden." *Id.* at 15. He also argues that the jury's verdict shocks the conscience because the jury convicted Appellant of IDSI but acquitted him of Rape when both offenses require proof of the "essential issue of sexual penetration." *Id.* at 15-16. He theorizes that because the jury convicted him of IDSI—which required that the jury find that there had been penetration—the jury must necessarily also convict him of Rape because that offense also has penetration as one of its elements. *Id.* at 18-20. He concludes that because the jury "arbitrarily" did not convict him of both offenses, "some error within the process occurred," although it is not clear "whether by mistake, compromise, or lenity this error occurred." *Id.* at 20. Accordingly, Appellant explains that "due to the jury's illogical determination, [he] challenged the weight of the evidence" and essentially complains that "the jury did not resolve conflicts in testimony, [but rather] made a factual finding which defies logic." *Id.* at 21, 24.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***,

129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id*. at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]"

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

In his Brief to this Court, Appellant identifies numerous alleged "inconsistencies" in the evidence and pieces of evidence he deems favorable to him, including: (1) Victim initially characterizing the sexual assault as a dream and then "revers[ing] course and call[ing] it rape[;]" (2) the lack of blood on her clothes and sheets; (3) Victim's delay in reporting the assault; (4) the "sole corroborating evidence was [Brother] hearing water in the other room;" (5) Victim continued to stay in her grandmother's home even after Victim informed her grandmother and [Mother] that Appellant had assaulted her; and (6) Victim's "testimony was inconsistent with the areas touched/penetrated." Appellant's Brief at 21-23. He then complains that the trial court erred by "summarily discount[ing] the statement that it was a dream" and "essentially [giving] *carte blanche* to the jury to make determinations, disregarding the lack of evidence, the inconsistency of the jury's finding, and factoring in as if it were fact that 'it is not at all uncommon for sexual assault victims, for a variety of reasons, to not make prompt complaints.'" *Id.* at 23.

Appellant essentially asks us to reassess the credibility of Victim and and reweigh the testimony and evidence at trial. As noted above, it is within the province of the jury to weigh Victim's testimony and determine whether Victim was credible. We cannot and will not reweigh the evidence and substitute our judgment for that of the jury. Our review of the record reveals

that the trial court did not abuse its discretion in concluding that the evidence is not so tenuous, vague, or uncertain, and the verdict not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2023