J-S02023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| XAVIER HOWARD | : | |
| | : | |
| Appellant | : | No. 300 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000464-2020

BEFORE:  LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                **FILED MARCH 19, 2025**

Appellant, Xavier Howard, appeals from the December 18, 2023, judgment of sentence entered in the Philadelphia County Court of Common pleas following his conviction by a jury of Rape by Forcible Compulsion, Strangulation, Unlawful Restraint, Terroristic Threats, and Simple Assault.[1] Appellant challenges the weight of the evidence.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On December 8, 2019, Appellant visited the Victim at her home.  Appellant and the Victim had been acquainted for approximately two years through the Victim's father, who had hired Appellant to help complete repairs at the Victim's residence. Over time, Appellant and the Victim became friends and, on one occasion, the

_____

[1] 18 Pa.C.S §§ 3121(a)(1), 2718(a)(1), 2902(a)(1), 2706(a)(1), and 2701(a), respectively.

two engaged in consensual sex. The Victim immediately told Appellant that the encounter between them had been a mistake and would not be repeated.

On the evening of the incident, Appellant was at the Victim's home. When the Victim asked Appellant to leave her home, Appellant refused and proceeded to prevent the Victim from leaving the residence herself. A fistfight ensued, resulting in Appellant overpowering the Victim, choking her, and knocking her over a sofa. The Victim fell to the floor, landing on her stomach. Appellant then placed his knees on the Victim's back and continued to choke her from behind by pulling her chin up with one arm and putting his other arm around her throat. Appellant then said, "You're going to love me. Why are you forcing me to make you love me." N.T. Trial, 11/15/22, at 56-57. The Victim heard Appellant unbuckle his belt, and she felt his penis enter her vagina. While Appellant raped the Victim, he continued to keep his hands around her neck, preventing her from breathing. Upon ejaculating, Appellant ended the assault. The Victim then retreated to a second-floor bathroom and showered. She suffered a black right eye, a large cut to her inner lip, and scratches to her neck from the assault.

Later that day, Appellant called her mother and father crying, unable to convey what had occurred. The Victim's father called the police and went to the Victim's residence. When he arrived, he observed the Victim sitting on the couch, frantic and crying. He noticed marks and a bruise around her mouth and a ring around her eye. The Victim then told her father that Appellant had raped her.

Police Officers Lauren Bielski and Diaz[2] responded to the Victim's residence. Officer Bielski spoke with the Victim who reported having been raped and observed injuries to the Victim's neck and lip. The Victim spoke with a raspy voice and was visibly upset.

The officers transported the Victim to the Special Victims Unit where Ramona Vellucci, a forensic nurse employed by the Philadelphia Sexual Assault Response Center, interviewed and examined the Victim, collected her clothing, and administered a rape kit. Subsequently, Ms. Vellucci prepared a report of the interview and examination verifying that Appellant had subjected the Victim to hitting, grabbing, punching, choking, and verbal abuse during the attack. The Victim also reported to Ms. Vellucci that she had lost consciousness and had urinated on herself, and that Appellant had vaginally penetrated her and attempted anal penetration during the attack. According to the paperwork prepared by Ms. Velucci, the Victim did not report any injuries to her eyes, hands, or vagina.

Police arrested Appellant on December 30, 2019, and the Commonwealth charged him with, *inter alia*, the above crimes. DNA subsequently collected from Appellant returned a "high and significant" match to DNA retrieved from the Victim. ***Id.*** at 24-26.

Appellant proceeded to a two-day jury trial on November 15, 2022. The Commonwealth presented the testimony of the Victim, her father, Officer

---

[2] Officer Diaz's first name does not appear in the record.

Bielski, Allison Denman, the clinical director of the Philadelphia Sexual Assault Response Center, and Philadelphia Police Detective Maureen Berner, each of whom testified in accordance with the above facts. Detective Berner also testified that she took the Victim's statement at the Special Victims Unit, photographed injuries to the Victim's neck and lip, but did not notice any injuries on the Victim's eyes or hands. The jury also viewed Officer Bielski's body worn camera footage which recorded her interaction with the Victim at the Victim's home.

Appellant did not testify or present any other evidence. His defense counsel argued that he and the Victim had engaged in consensual sex, after which the Victim fabricated the rape to retaliate against Appellant for refusing to break up with his girlfriend to become the Victim's romantic partner. His counsel attempted to impugn the Victim's credibility by pointing out numerous alleged inconsistencies in the Victim's reports of the incident and emphasizing that the Commonwealth's physical evidence showed, *inter alia*, no sign of defensive wounds and no injuries to the Victim's eyes as she claimed.

The jury did not credit Appellant's defense theory and, following its deliberation, convicted Appellant of the above charges. On December 18, 2023, the court sentenced Appellant to an aggregate term of 7 to 14 years of incarceration followed by 3 years of probation.

On December 28, 2023, Appellant filed a post-sentence motion in which he challenged, *inter alia*, the weight of the evidence. On January 2, 2024, the trial court denied the motion.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

Did the lower court err and abuse its discretion when it denied [Appellant's] post-sentence motion for a new trial where the verdict was so against the weight of the evidence as to shock the conscience?

Appellant's Brief at 2.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the fact[-]finder." **Commonwealth v. Hopkins**, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. **Talbert**, 129 A.3d at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. **Id.** at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's

determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *Id.* (citation and internal quotation marks omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

Critically, "[t]he testimony of a sexual assault victim standing alone is sufficient weight to support a conviction." *Commonwealth v. Strutt*, 624 A.2d 162, 164 (Pa. Super. 1993).

In support of his claim that his convictions are against the weight of the evidence, Appellant claims that the Victim's testimony was inconsistent and contrary to the physical evidence. Appellant's Brief at 12-22. To this end, Appellant highlights the alleged inconsistencies in the Victim's statements to her family and to investigators, the lack of physical evidence to support her claims, and his proffered theory that the Victim had a motive to fabricate the rape accusation. *Id.* at 13-18. He then asserts that the trial court's "three sentences of analysis" justifying its denial of Appellant's post-sentence motion are "either legally inadequate or else unsupported by the record." *Id.* at 11, 19-22.

Here, the jury sitting as factfinder found credible the Victim's testimony, which the totality of the evidence, including the testimony of her father and police investigators, as well as photographic and other physical evidence, largely corroborated. To the extent that there were inconsistencies in the evidence, the jury resolved those inconsistencies as is its mandate. Appellant essentially asks us to reweigh the evidence, and adopt his defense theory, and conclude that the Victim fabricated her account of the incident to retaliate against Appellant. This we cannot and will not do.

Our review of the record shows that the evidence is not so tenuous, vague, or uncertain, and the verdict was not so contrary to the weight of the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/19/2025