J-S02011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VLADIMIR CORREA-AYALA, | |
| Appellant | No. 918 EDA 2015 |

Appeal from the Judgment of Sentence March 6, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001506-2014

BEFORE:  SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED MARCH 15, 2016**

Appellant, Vladimir Correa-Ayala, appeals from the judgment of sentence entered following his conviction of three counts of robbery and one count of tampering with physical evidence.  We affirm.

This case involves three robberies that took place on the morning of March 7, 2014, near the Pennsylvania Department of Transportation ("Penn DOT") building in Allentown, Pennsylvania.  The trial court summarized the facts of the three robberies as follows:

> At approximately 6:30 a.m. on March 7, 2014, Kimberly Bubbenmoyer was walking from her car parked in a parking deck to her place of employment at the [PennDOT building] located at 10th and Hamilton Streets, Allentown, Lehigh County, Pennsylvania.  As she traversed the 900 block of Maple Street, approximately a block and a half away from the Penn DOT building, she noticed a male emerge from behind a snow bank and begin to walk in front of her.  He then turned left down a side alley perpendicular to Maple Street.  As Ms. Bubbenmoyer

walked past the entrance to the alley, the same male came out of the alleyway. Ms. Bubbenmoyer next remembered being pushed to the ground forcefully. While on the ground, the male pointed a long knife with a 12 to 14 inch blade at her while standing over her. Ms. Bubbenmoyer heard the male repeating the same word in Spanish, though she could not understand it.

Ms. Bubbenmoyer, afraid that the man would stab her and hoping that she could appease him, put her purse to the side. She did so and watched as the male took the purse. The male remained standing over her and was motioning with his hands for her to get up from the ground and to leave the area. The entire incident lasted three to four minutes. She sustained a sprained ankle and bone contusions on her lower back as a result of the incident.

Ms. Bubbenmoyer went directly to the Allentown Police Department Substation located at 10th and Hamilton Streets, Allentown, Lehigh County, Pennsylvania. Although the lighting was not good at that time of morning, she described the assailant to the police as wearing gray sweatpants, a black baseball cap and had a black hoodie sweatshirt pulled around his face so that she could only see his eye area. She also told the police that along with some personal items such as identification cards, credit cards, a checkbook and hygiene products, she had a handgun in her purse.

At approximately 7:20 a.m. the same day, Bernadette Taylor had parked her car in the parking garage and was walking towards the Penn DOT building to go to work while talking on her cellular telephone. As she walked down the 900 block of Maple Street, she glanced down an alley located near the residence at 954 Maple Street. She saw a man wearing a red sweatshirt pointing a gun at her and motioning for her to come into the alley. The man's face was covered with a black hat but for his eyes and he was wearing dark pants. She could only see his eye area.

Ms. Taylor refused to go into the alley and yelled for the man to get away from her. She was scared that she would be shot and ran to the Penn DOT building, approximately a half of a block away. As she ran, she glanced behind but no longer saw the man. When she arrived at the Penn DOT building, she called

9-1-1 and was advised that the police were aware of the situation.

At approximately 7:29 a.m., Adam Stettler was walking from the parking garage at 9th and Maple Streets, Allentown, Lehigh County, Pennsylvania to work at Penn DOT. The distance is approximately one block. Halfway down Maple Street, Mr. Stettler noticed a person emerging from the alleyway. The man stopped approximately 10 feet in front of Mr. Stettler. Mr. Stettler noticed that the man was wearing a bright red hooded sweatshirt pulled taut around his face so that only the top of the nose to the middle of the forehead was exposed. The man began to speak in Spanish and motioned to the alley where he had emerged from. Mr. Stettler noticed that the man was holding a small, dark-colored pistol, pointed at Mr. Stettler's chest area.

Believing that the man was attempting to take something from him, Mr. Stettler shook his head "no." The man racked the slide on the handgun and Mr. Stettler interpreted the action to mean that the man was putting a bullet in the chamber of the handgun. Mr. Stettler began to run back towards the garage area.

At that moment, police officers Matthew Diehl and Andrew Fegley arrived on scene in Officer Fegley's marked patrol vehicle. Having been alerted to the two prior robberies in the area, the officers were patrolling the area. As they approached 10th and Maple Streets, Officer Fegley identified the area of Maple Street to Officer Diehl to show him where the robberies had been reported to have taken place. As the officers glanced up Maple Street, they noticed two males standing in the street. One man had his hands down and extended at the sides. The other individual was wearing red and looked away from the officers as their vehicle came into view.

Officer Fegley quickly drove on Maple Street towards the two individuals. The individual who originally had his arms at his sides began to point down the alleyway (Hazel Street). Officer Diehl exited the passenger side of the patrol car and ran down the alleyway. He caught a glimpse of the individual wearing red, but could not find anyone as he got to the rear of the residential buildings on the 900 block of Maple Street. After approximately 15 to 20 seconds, Officer Diehl heard a crashing noise and saw

- 3 -

an individual in a red hoodie jump from the fence between 956 and 954 Maple Street to the adjacent property at 25 South Tenth Street.

Trial Court Opinion, 6/8/15, at 1-5. The male, later identified as Appellant, was apprehended in an apartment at the 25 South Tenth Street property.

On February 6, 2015, following a jury trial, Appellant was convicted of three counts of robbery and one count of tampering with physical evidence. On March 6, 2015, Appellant was sentenced to serve an aggregate sentence of nine to eighteen years of incarceration. Appellant timely appealed. Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. Was the evidence insufficient to support the verdict of robbery for the following reasons: the person who accosted Bernadette Taylor and Adam Stettler neither demanded money or possessions, nor did he make any gestures which indicated a demand for movable property. In order to prove robbery, it must be proven beyond a reasonable doubt that [Appellant] was attempting to take the movable property of Bernadette Taylor and Adam Stettler.

B. Was the verdict against the weight of the evidence for the following reasons:

    A. Neither Kimberly Bubbenmoyer nor Bernadette Taylor could identify [Appellant] as the person who accosted them;

    B. The weapon that was recovered, and the recovered stolen items were not found in [Appellant's] possession;

    C. There was no fingerprint or DNA evidence connecting [Appellant] to the crimes;

- 4 -

      D.   The clothing recovered by the police did not match the description given by the victims (red and gray hoodie vs. red hoodie; black hoodie vs. red hoodie; gray sweatpants vs. dark bottoms);

      E.   [Appellant] was arrested in a multi unit apartment, but the police did not investigate any other apartment for evidence or suspects;

      F.   [Appellant] was not breathing heavily, was not sweating, and did not have a flushed face when arrested, even though the police testified they had just been in a foot pursuit with the suspect.

Appellant's Brief at 4-5 (full capitalization omitted).

In his first issue, Appellant contends that the evidence was insufficient to support the verdict for robbery where the Commonwealth failed to prove beyond a reasonable doubt that Appellant was attempting to take the movable property of Bernadette Taylor and Adam Stettler. Appellant's Brief at 15. Specifically, Appellant contends that as to Bernadette Taylor, the evidence reveals that although the man was pointing a gun at her, he "did not say anything or make any noise[,] nor did he try to take anything or grab anything from her." *Id.* (internal cites omitted). With regard to Adam Stettler, the man spoke to Mr. Stettler in Spanish, which Mr. Stettler did not understand. *Id.* at 15-16. Appellant argues that he "did not try to take anything or grab anything from him." *Id.* at 16. Accordingly, Appellant contends that there is no evidence to show a theft or attempted theft from Bernadette Taylor or Adam Stettler. *Id.*

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Hansley***, 24 A.3d 410, 416 (Pa. Super. 2011).

Appellant was charged with robbery under 18 Pa.C.S. § 3701(a)(1)(ii), which provides as follows:

> **(a) Offense defined.--**
>
> > (1) A person is guilty of robbery if, in the course of committing a theft, he:
> >
> > * * *
> >
> > > (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

- 6 -

18 Pa.C.S. § 3701 (a)(1)(ii). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S. § 3701(a)(2). "Theft" is defined as the unlawful taking of "movable property of another with the intent to deprive him thereof." 18 Pa.C.S. § 3921(a).

Additionally, this Court has explained the following regarding a conviction under 18 Pa.C.S. § 3701(a)(1)(ii):

> [T]he Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury." The threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of "serious bodily injury." A factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm.

*Commonwealth v. Hopkins*, 747 A.2d 910, 914-915 (Pa. Super. 2000) (internal citations omitted).

The trial court provided the following analysis on this claim:

> The jury heard testimony from Ms. Taylor that she was approached by an individual wearing a red sweatshirt who pointed a gun at her and motioned for her to come into the alley. Ms. Taylor testified that she was frightened and began to run away. Mr. Stettler testified that a man approached him as he walked down Maple Street. When they were approximately 10 feet away from each other, the individual began to speak to Mr. Stettler in Spanish and motion towards the alley nearby. Mr. Stettler noticed the man was holding a gun. When the individual began to walk closer to the alley where he was directing Mr. Stettler, Mr. Stettler held up his hands and refused to go into the

alley. At that point, Mr. Stettler heard the individual rack the slide of the gun.

After review of the evidence as it pertains to Ms. Taylor and Mr. Stettler, the Court believes that the Commonwealth presented sufficient evidence at trial to prove beyond a reasonable doubt that the Appellant was attempting to commit a theft at the time he approached both Ms. Taylor and Mr. Stettler. In the case of Ms. Taylor, the Commonwealth put forth evidence that Ms. Taylor was approached and motioned into an alleyway, at gunpoint. Although Ms. Taylor stated that the individual did not physically grab at her purse or attempt to physically take anything from her, we find that the evidence that the individual was pointing a gun at her and waving her into a nearby alleyway allows a permissible inference that the individual was attempting to rob Ms. Taylor. Clearly frightened, Ms. Taylor ran immediately from the scene and reported the incident to the police. Taken in conjunction with evidence of the robbery which occurred just minutes earlier, we find that the Commonwealth presented sufficient evidence at trial to sustain the Robbery conviction with respect to Ms. Taylor.

Likewise, the Commonwealth provided sufficient evidence to satisfy the elements of Robbery as charged in Mr. Stettler's case. Mr. Stettler testified that he was approached by an individual holding a gun who attempted to waive him into an alley. The individual spoke to Mr. Stettler in Spanish, but Mr. Stettler was unable to understand him. When Mr. Stettler refused to go into the alley by holding up his hands and saying no, the individual racked the slide on the gun. Mr. Stettler testified that he did not follow the individual because he was terrified of what would occur should he go in the alley as directed. He interpreted the individual's actions as an intention to take something from him. When police arrived by chance, Mr. Stettler pointed out the individual to them. Based on the evidence and the permissible inferences derived from the attendant circumstances, the Commonwealth provided sufficient evidence to sustain the conviction for Robbery with respect to Mr. Stettler.

Trial Court Opinion, 6/8/15, at 14-16.

Here, the evidence aptly summarized by the trial court supports the conclusion that Appellant's actions were conducted "in the course of committing a theft," as he was attempting to take the property of Ms. Taylor and/or Mr. Stettler. As explained in **Hopkins**, it is unnecessary for the Commonwealth to prove a verbal utterance or threat by Appellant. The evidence demonstrated aggressive actions by Appellant that threatened the victims' safety; specifically, pointing a firearm at them and attempting to force them into an alleyway. Viewing the evidence in the light most favorable to the Commonwealth, the evidence indicates that Appellant was attempting to take something from them. Moreover, in the course of committing that theft, Appellant threatened Ms. Taylor and Mr. Stettler with immediate serious bodily injury by brandishing the firearm. Thus, we agree with the trial court that the evidence was sufficient to support Appellant's convictions of robbery. Appellant's claim fails.

In his second issue, Appellant asserts that the verdict was against the weight of the evidence. Appellant's Brief at 16. Appellant presents the following bases for this argument:

> [1)] neither Kimberly Bubbenmoyer nor Bernadette Taylor could identify [Appellant] as the person who accosted them; [2)] the weapon that was recovered, and the recovered stolen items were not found in [Appellant's] possession; [3)] there was no fingerprint or DNA evidence connecting [Appellant] to the crimes; [4)] the clothing recovered by the police did not match the description given by the victims (red and gray hoodie vs. red hoodie; black hoodie vs. red hoodie; gray sweatpants vs. dark bottoms); [5)] [Appellant] was arrested in a multi unit apartment, but the police did not investigate any other

- 9 -

apartment for evidence or suspects; and [6)] [Appellant] was not breathing heavily, was not sweating, and did not have a flushed face when arrested, even though the police testified they had just been in a foot pursuit with the suspect.

*Id.* at 16-17 (full capitalization omitted).

With respect to a weight claim, we apply the following standards:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnote, and internal quotation marks omitted). "An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa. Super. 2013).

In addressing Appellant's weight of the evidence claim, the trial court provided the following explanation supporting its determination that the verdict was not against the weight of the evidence:

- 10 -

Viewing the evidence presented at trial, the Court has determined that the jury's verdict is not so contrary to the evidence presented that a new trial is necessary. The jury was free to evaluate the evidence presented by the Commonwealth and give what importance it wished to each fact presented. Although the evidence alluded to in his Statement of Matters Complained of on Appeal could have been relied on by the Jury to establish reasonable doubt as to the Appellant's participation in the crimes charged, we believe that the additional evidence which was provided at trial through testimony allows this Court to find that the Jury's verdict did not so "shock one's sense of justice" that a new trial is necessary.

Specifically, we find that "evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa.Super. 2011)(internal citations omitted). Mr. Stettler testified that an individual stepped out from an alleyway, directly in front of him. He stated that the individual was approximately 10 feet away from him and was wearing a red hooded sweatshirt which covered much of his face, other than the area between the top of his nose to the middle of his forehead. The individual spoke to Mr. Stettler, though it was in Spanish and Mr. Stettler was unsure of exactly what the individual was saying. After several seconds of interaction with the individual, he noticed that the individual had a small, dark-colored pistol. The individual waved Mr. Stettler into an alley, but Mr. Stettler refused to go, communicating to the individual by saying no and waving his hands. Mr. Stettler saw the weapon pointed at his chest and heard the slide on the pistol become engaged. Fearing being shot, Mr. Stettler fled the scene. Approximately an hour or two later, police accompanied Mr. Stettler to an open parking lot area and brought the Appellant out of the apartment for his view. Mr. Stettler identified the Appellant as the person he had the encounter in the alleyway with. He stated that he recognized the Appellant's defined brow line and the way his eyes were set into his head. Furthermore, Mr. Stettler identified the Appellant as the individual he encountered in the alley at the preliminary hearing and at trial.

- 11 -

The remaining averments in the Statement of Matters Complained of on Appeal, while demonstrating discrepancies in the testimony, do not require that a new trial take place. Although Ms. Bubbenmoyer and Ms. Taylor were unable to identify the Appellant as the individual that they encountered, they provided consistent evidence that the individual spoke Spanish. Ms. Bubbenmoyer further stated that she believed the individual to have been "Spanish" as he had darker skin that she could see around his eye areas. She also testified that her purse was taken and that in that purse was a .32 caliber pistol. Ms. Taylor testified that the individual she encountered had a red sweatshirt on and that he had a gun. The Commonwealth also provided evidence that when the police arrived at the apartment, they found the Appellant lying in bed, draped in a red hooded sweatshirt, next to the left companion sandal of the sandal found embedded in the fence where Officer Diehl observed the red-hooded sweatshirt wearing individual flee after a foot pursuit. Additionally, Ms. Bubbenmoyer's gun (which was stolen during the course of the incident involving her) was located in a dumbwaiter shaft accessible by occupants of the apartment, including the Appellant, via a specialized tool located in a toolbox found in the first floor apartment. Further, a bullet matching Ms. Bubbenmoyer's gun was located between the mattress and box spring directly under where the Appellant was sleeping.

Trial Court Opinion, 6/8/15, at 11-13.

The trial court's summation of the evidence at trial is supported by the evidence of record. Moreover, the jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant, as was its right. The jury weighed the evidence and concluded Appellant perpetrated the crimes in question. This determination is not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact finder and reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in determining that

Appellant's weight of the evidence claim lacked merit. Thus, this claim fails to provide Appellant relief.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2016