J-S75003-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD ALEXANDER FILL | |
| Appellant | No. 60 WDA 2019 |

Appeal from the Judgment of Sentence Entered January 23, 2017
In the Court of Common Pleas of Erie County
Criminal Division at No.: CP-25-CR-0000082-2016

BEFORE:  STABILE, KUNSELMAN, and PELLEGRINI,[*] JJ.

MEMORANDUM BY STABILE, J.:                FILED AUGUST 25, 2020

Appellant Richard Alexander Fill appeals from the January 23, 2017 judgment of sentence entered in the Court of Common Pleas of Erie County ("trial court"), following the nunc pro tunc reinstatement of his right to file post-sentence motions.  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As summarized by the trial court:

> On the afternoon of November 3, 2015, Crisis Services at Safe Harbor requested the assistance of the Pennsylvania State Police at Appellant's home.  As police approached Appellant's residence they observed Appellant in the front yard.  When Appellant saw the police vehicles approaching, he immediately barricaded himself inside the residence.  Corporal Matthew Wargo, shift supervisor, observed a Penelec service pole lying across Appellant's driveway that appeared to him to have been recently cut down with a chainsaw.  For approximately an hour and a half the police attempted to make contact with Appellant and requested Appellant exit the residence.  Appellant ignored the

_____

[*] Retired Senior Judge assigned to the Superior Court.

officers' requests and instead played loud music and repeatedly opened the front window, yelling and howling at the officers.

In the meantime, Crisis Services had obtained a warrant for a mental health evaluation, pursuant to 50 P.S. § 7302. The police advised Appellant of the warrant and again instructed him to exit the residence. Appellant continued to ignore the officers' requests. At this juncture, the police requested assistance from the Special Emergency Response Team (SERT) and developed a perimeter around the house. Before the SERT arrived, Appellant re-opened the front window, fired a shot, and closed the window.

After employing numerous additional strategies, the SERT team was successful in removing Appellant from the residence. Appellant was arrested. Following the arrest, Pennsylvania State Police Trooper Scott Sipko conducted a search of Appellant's residence pursuant to a search warrant. Trooper Sipko found a green duffle bag inside the doorway which contained six Mason jars of marijuana. He found a seventh Mason jar containing marijuana on the kitchen counter, along with a water bong or smoking pipe. Trooper Sipko located a chainsaw on a patio table outside the residence. A halfcocked pellet gun was found near the window where Appellant had fired the shot. Charges ensued. Following a non-jury trial on November 7, 2016, Appellant was convicted of: Count One: Assault on a Law Enforcement Officer; Count Two: Criminal Mischief; Count Three: Simple Assault; Count Four: Recklessly Endangering the Welfare of Another Person; Count Six: Possession of a Controlled Substance (marijuana); and Count Seven: Possession of Drug Paraphernalia.[FN1]

[FN1: 18 Pa.C.S.A. §§ 2702.1(a), 3304(a)(5), 2701(a)(3) and 2705, and 35 P.S. § 780-113(a)(16), (32), respectively.]

On January 23, 2017, Appellant was sentenced as follows:

Count One: Assault of Law Enforcement Officer – 5 years to 7 years of incarceration.

Count Two: Criminal Mischief- 6 months to 24 months of incarceration, consecutive to Count One.

Count Three: Simple Assault - Merged with Count One.

Count Four: Recklessly Endangering Another Person - Merged with Count One.

Count Six: Possession of Controlled Substance - 12 months of probation, consecutive to Count Two.

Count Seven: Possession of Drug Paraphernalia 12 months of probation, concurrent to Count Six.

Trial Court Opinion, 3/18/19 at 1-3 (record citations omitted). Instead of filing post-sentence motions, Appellant timely appealed. On appeal, he raised only two issues, one implicating the weight of the evidence and the other challenging the discretionary aspects of sentencing. In affirming his judgment of sentence, a panel of this Court concluded that Appellant's weight and discretionary aspect of sentencing issues were waived because he failed to file post-sentence motions. See Commonwealth v. Fill, 183 A.3d 1096 (Pa. Super. filed January 30, 2018) (unpublished memorandum)

On February 21, 2018, Appellant pro se filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. The PCRA court appointed counsel, who, on July 16, 2018, filed an amended petition, raising, inter alia, a claim for ineffective assistance of trial counsel. Specifically, Appellant argued that trial counsel was ineffective for failing to file post-sentence motions. On November 8, 2018, the PCRA court granted Appellant relief. The PCRA court concluded that trial counsel was ineffective in failing to file post-sentence motions when counsel "was aware of [Appellant's] desire to file" them. PCRA Court Order, 11/8/18 at 4. Because of counsel's ineffectiveness, Appellant was "fundamentally deprived of appellate review on the substantive merits of his claims." Id. Accordingly, the PCRA court reinstated Appellant's right to file post-sentence motions nunc pro tunc.

On December 7, 2018, Appellant filed a nunc pro tunc post-sentence motion, challenging the discretionary aspects of his sentence, and the weight of the evidence, and claiming that his trial was "fundamentally tainted"

- 3 -

because of trial counsel's prior representation of a potential Commonwealth witness. Post-Sentence Motion, 12/7/18 at ¶ 2(a)-(d). On December 10, 2018, the trial court denied the post-sentence motion. Appellant timely appealed. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, repeating the same four issues raised in his post-sentence motion. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On April 10, 2019, during the pendency of the appeal, Appellant filed a motion for a Grazier[1] hearing. On April 17, 2019, we issued an order remanding this case to the trial court with instruction to hold a Grazier hearing. On May 29, 2019, the trial court conducted the hearing, following which the trial court determined that Appellant's "waiver of counsel was knowing, intelligent and voluntary." Trial Court Memorandum, 6/10/19. As a result, the trial court permitted Appellant to proceed pro se. The trial court also granted Appellant's request to file an amended post-sentence motion and Rule 1925(b) statement. On July 10, 2019, Appellant filed an amended post-sentence motion and an amended Rule 1025(b) statement.

On appeal, Appellant filed a pro se brief presenting the following issues for our review:

> I. Did the lower court err in not holding a suppression hearing when the same was requested in the amended post sentence

---

[1] Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998).

motion and no 302 warrant nor search warrant have ever been produced let alone shown to [Appellant]?

II. Was the evidence adduced at trial insufficient where the circumstances did not show the requisite intent or show [Appellant] had a conscious object to harm a law enforcement officer, and where there was no evidence a firearm was employed that meets the operative definition remaining in the statute after the definition originally employed was removed from use by Commonwealth v. Valentine and Commonwealth v. Newman?

III. Was there sufficient evidence that [Appellant] committed the act of criminal mischief by cutting a pole with a chainsaw?

Appellant's Brief at 2 (capitalization omitted).

After careful review of the record and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's claims. See Trial Court Opinion, 6/2/20, 4-12. With respect to the first issue raised by Appellant, the trial court correctly determined that he is not entitled to a suppression hearing because "[t]his case is not in the pretrial stage." Id. at 5. Moreover, to the extent Appellant's first issue implicates an ineffectiveness claim, we agree with the trial court that the resolution of the claim must await collateral review.[2] Id. at 5-6. Appellant's

_____

[2] In Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), our Supreme Court held that, as a general rule, defendants must wait to raise ineffective assistance of counsel claims until collateral review. Only in specific limited circumstances may a defendant raise ineffectiveness claims in post-sentence motions and on direct appeal. See, e.g., Commonwealth v. Holmes, 79 A.3d 562, 563–64 (Pa. 2013) (trial court has discretion to entertain ineffectiveness claims on post-verdict motions and direct appeal where: (1) claim of ineffectiveness is apparent from record and meritorious to the extent that immediate consideration best serves interests of justice; or (2) where good cause is shown and defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review from his conviction and sentence). These exceptions do not apply here.

second and third issues, implicating sufficiency of the evidence, likewise lack merit.[3]  Id. at 7-10.

With respect to his second issue, the trial court found that "the evidence established that Appellant attempted to cause bodily injury by knowingly discharging a firearm out of the window of his property; that Trooper Deitle was a law enforcement officer acting in the performance of his duties; and that Appellant knew law enforcement had surrounded his property."[4]  Id. at

_____

[3] A claim challenging the sufficiency of the evidence is a question of law." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Antidormi, 84 A.3d 736, 756 (Pa. Super. 2014), appeal denied, 95 A.3d 275 (Pa. 2014).

[4] We define assault of a law enforcement officer, in pertinent part, as:

> A person commits a felony of the first degree who attempts to cause or intentionally or knowingly causes bodily injury to a law

8. The court concluded that Appellant acted with a reckless disregard of consequences of his actions and he consciously disregarded an unjustified and high risk that his actions could cause death or serious bodily injury." Id. Accordingly, under these circumstances, we agree with the trial court's conclusion that, viewed in a light most favorable to the Commonwealth, the evidence establishes that the Commonwealth proved beyond a reasonable doubt that Appellant was guilty of assault of law enforcement officer. Insofar as Appellant argues that Valentine or Newman control the definition of "firearm", his argument is without merit. The court explained that, unlike the defendants in Valentine and Newman, Appellant did not receive a mandatory minimum sentence and that Valentine and Newman did not declare unconstitutional the definition of firearm as set forth in Section 2702.1 and 42 Pa.C.S.A. § 9712. Id. at 9-10.

Finally, viewing the evidence in a light most favorable to the Commonwealth, we also agree with the trial court's conclusion that the Commonwealth proved beyond a reasonable doubt that Appellant committed criminal mischief.[5] Id. at 11-12. Here, the uncontroverted evidence

_____

enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm.

18 Pa.C.S.A. § 2702.1.

[5] Section 3304(a)(5) provides that "[a] person is guilty of criminal mischief if he . . . intentionally damages real or personal property of another." 18 Pa.C.S.A. § 3304(a)(5).

establishes that "Appellant had intentionally cut down the service pole with a chainsaw and the service pole belonged to Penelec." Id. at 11. Accordingly, we affirm Appellant's January 23, 2017 judgment of sentence. We further direct that a copy of the trial court's June 22, 2020 Rule 1925(a) opinion be attached to any future filings in this case.[6]

Judgment of sentence affirmed. Applications denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2020

---

[6] Based on our disposition of Appellant's first issue, we deny his pro se December 23, 2019 "Application to Strike" and his pro se July 20, 2020 "Application for Informal Clarification."

COMMONWEALTH OF PENNSYLVANIA     :     IN THE COURT OF COMMON PLEAS
    :     OF ERIE COUNTY, PENNSYLVANIA
    :
v.     :     CRIMINAL DIVISION
    :
RICHARD ALEXANDER FILL     :     NO. 82 OF 2016

## SUPPLEMENTAL 1925(a) OPINION

This matter is before the Court on remand by the Superior Court of Pennsylvania directing the Court to prepare a supplemental Pa.R.A.P. 1925(a) opinion, specifically addressing three issues raised in Appellant's *pro se* brief. For the reasons set forth below and those addressed in this Court's original 1925(a) Opinion dated March 18, 2019, incorporated herein, the judgment of sentence should be affirmed.

## I. SUPPLEMENTAL FACTUAL AND PROCEDURAL BACKGROUND

A full factual and procedural background was set forth in this Court's original 1925(a) Opinion. As directed by the Superior Court of Pennsylvania, the following supplemental factual and procedural background serves to specifically address Appellant's claims regarding the sufficiency of the evidence for convictions at Count One, Assault of a Law Enforcement Officer, and Count Two, Criminal Mischief.

On November 3, 2015, the Pennsylvania State Police responded to a call to assist Crisis Services at Safe Harbor at Appellant's home at 8032 Welch Road. *Transcript of Proceedings, November 7, 2016 (Tr.) pp. 7-8.* The officers had been at Appellant's home the prior day. *Id.* at 7. As the officers approached Appellant's residence in marked vehicles, they observed him outside in the front yard. *Id.* at 9. As soon as Appellant noticed the officers approaching, he immediately went inside the home. *Id.* Upon parking at Appellant's property and exiting the vehicles, officers

*107*

observed a service pole in the front yard lying across the driveway. *Id.* at 10-11. It was clear to the officers that the pole had been recently cut down. *Id.* The pole contained an identification number, identifying it as the property of Penelec. *Id.* at 11-12.

The uniformed officers walked up to Appellant's front door, identified themselves, and attempted to make contact with Appellant for over an hour and a half. *Id.* at 13-15. The officers informed Appellant that they were there solely to assist Crisis Services. *Id.* Appellant's response to the officers was to play music very loudly and to repeatedly open a window, scream and yell at the officers, and shut the window again. *Id.* at 15. Eventually, as Appellant continued to be non-responsive and the officers were informed that Crisis Services had obtained a warrant for a mental health evaluation pursuant to 50 P.S. § 7302, the officers called the Special Emergency Response Team (SERT) for backup. *Id.* at 16-17.

While waiting for SERT to arrive and get into place, the officers on-site formed a perimeter around Appellant's residence. *Id.* at 17. One of the officers, Pennsylvania State Trooper Joshua Deitle, was posted approximately thirty yards from the north side (back) of Appellant's residence. *Id.* at 33-35. While observing the residence for movement, Trooper Deitle saw a small window on the left back side of the house open, heard a gunshot a few seconds later, and then watched the window being quickly shut again. *Id.* at 35-36; 38-39. Trooper Deitle stated that based on his training and experience, the gunshot sounded like a .22 caliber rifle shot. *Id.* at 36.

The SERT team successfully removed Appellant from the residence and he was arrested. *Id.* at 24-28. Following the arrest, Pennsylvania State Trooper Scott Sipko conducted a search of Appellant's residence pursuant to a search warrant. *Id.* at 50. During the search of Appellant's residence, Trooper Sipko located a Husqvarna chainsaw on a patio table outside the residence and next to a shed. *Id.* at 52-53. Trooper Sipko also located a "high-powered pellet gun" with its

2

pump in a half-cocked position. *Id.* at 53-54. *See also*, Commonwealth Exhibit 7 (photograph of chainsaw) and Commonwealth Exhibit 10 (chainsaw). The pellet gun was found on a table or chest approximately three feet from the same window Trooper Deitle reported he had observed being opened, heard the shot, and saw the window being closed. *Id.* at 54-55. *See also*, Commonwealth Exhibit 8 (photograph of pellet gun) and Commonwealth Exhibit 11 (pellet gun).

Following the bench trial on November 7, 2016, Appellant was convicted of: Count One: Assault on a Law Enforcement Officer; Count Two: Criminal Mischief; Count Three: Simple Assault; Count Four: Recklessly Endangering the Welfare of Another Person; Count Six: Possession of a Controlled Substance (marijuana); and Count Seven: Possession of Drug Paraphernalia.[1]

On February 14, 2017, Appellant filed a Notice of Appeal, and on January 30, 2018, the Superior Court affirmed the judgment of sentence. See, *Commonwealth v. Richard Alexander Fill*, Unpublished Memorandum filed January 30, 2018 at 319 WDA 2017. On February 21, 2018, Appellant filed his first PCRA, after which the Court reinstated the right to file a post sentence motion *nunc pro tunc*. On December 7, 2018, Appellant filed a post sentence motion. On December 10, 2018, the Court denied the post sentence motion.

On January 9, 2019, Appellant filed a Notice of Appeal *Nunc Pro Tunc*. In his counseled 1925(b) Statement, Appellant raised a claim that the verdict was against the weight of the evidence, sentencing claims, and a claim that trial counsel had a conflict of interest. On March 18, 2019, the Court filed its 1925(a) Opinion addressing Appellant's claims.

On April 17, 2019, the Superior Court of Pennsylvania remanded the case so a colloquy pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) could be conducted to determine

---

[1] 18 Pa.C.S.A. §2702.1(a); 18 Pa.C.S.A. §3304(a)(5); 18 Pa.C.S.A. §2701(a)(3); 18 Pa.C.S.A. §2705; 35 Pa.C.S.A. §780-113(a)(16); 35 Pa.C.S.A. §780-113(a)(32), respectively.

if Appellant knowingly, voluntarily, and intelligently wished to proceed *pro se*. A *Grazier* hearing was held on May 29, 2019, after which the Court issued an Order on May 30, 2019, permitting Appellant to proceed *pro se*. On June 10, 2019, the Court issued a Memorandum and Order formalizing its grant (given from the bench on May 29, 2019) of permission for Appellant to file an amended post-sentence motion and/or amended 1925(b) Statement within thirty days. The case was thereafter retransmitted to the Superior Court of Pennsylvania on June 12, 2019.

On July 10, 2019, Appellant filed an "Amended Concise Statement of Matters Complained of on Appeal." On July 12, 2019, Appellant filed an "Amended Post-Sentence Motion for Arrest of Judgment and/or New Trial and/or an Evidentiary Hearing and/or Suppression of Evidence Nunc Pro Tunc."

On March 12, 2020, the Superior Court of Pennsylvania remanded the case to this Court with the direction to prepare a supplemental 1925(a) Opinion addressing three specific issues raised in Appellant's *pro se* brief on appeal.

## II. ISSUES ON REMAND

As directed by the Superior Court of Pennsylvania, the Court has been directed to specifically address the following issues as set forth by Appellant in the *pro se* brief (Roman numerals removed for clarity):

- Did the lower court err in not holding a suppression hearing when the same was requested in the amended post sentence motion and no 302 warrant nor search warrant have ever been produced let alone shown to [Appellant]?

- Was the evidence adduced at trial insufficient where the circumstances did not show the requisite intent or show [Appellant] had a conscious object to harm a law enforcement officer, and where there was no evidence a firearm was employed that meets the operative definition remaining in the statute after the definition originally employed was removed from use by *Commonwealth v. Valentine* and *Commonwealth v. Newman*?

4

- Was there sufficient evidence that [Appellant] committed the act of criminal mischief by cutting a pole with a chainsaw?

*Commonwealth v. Fill*, 60 WDA 2019 (Pa. Super, March 12, 2020) (Order). The issues shall be addressed *ad seriatim*.

## III. DISCUSSION

### A. Post-Sentence Suppression Hearing

Appellant claims he should have been afforded a post-sentence suppression hearing regarding the search warrant for Appellant's residence and a warrant issued pursuant to 50 P.S. § 7302 (hereinafter "302 warrant"). *Commonwealth v. Fill*, 60 WDA 2019 (Pa. Super, March 12, 2020) (Order); *see also, Amended Concise Statement of Matters Complained of on Appeal*, July 10, 2019, ¶¶ 6, 7. This claim merits no relief.

In support of his argument that this Court can hold a suppression hearing post-verdict and post-sentencing, Appellant cites Pennsylvania Rules of Criminal Procedure Rule 581. *See Amended Post-Sentence Motion*, July 10, 2019, ¶ D. This is an incorrect application of the Rule. Pa.R.Crim.P. Rule 581 is found in **Chapter 5: Pretrial Procedures in Court Cases**. This case is not in the pretrial stage. There has already been a full bench trial, sentencing, and the consideration of multiple motions. There is no authority to permit the Court to hold a suppression hearing at this stage of the proceedings and Appellant's post-sentence motion requesting a suppression hearing is properly denied. To the extent Appellant's claim raises issues of ineffectiveness of trial counsel for not challenging the search warrant or the 302 warrant, such a claim cannot be considered on direct appeal. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (holding "a petitioner

5

should wait to raise claims of ineffective assistance of trial counsel until collateral review."). This claim must be dismissed.

## B.    Sufficiency of the Evidence Claims

Appellant next claims the evidence is insufficient to sustain the charges of Assault of a Law Enforcement Officer and Criminal Mischief. *Commonwealth v. Fill*, 60 WDA 2019 (Pa. Super, March 12, 2020) (Order); *see also, Amended Post-Sentence Motion*, July 10, 2019, p. 6, ¶ B.

### 1. Sufficiency of the Evidence Standard

When evaluating a challenge to the sufficiency of the evidence, the Court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, together with all reasonable inferences from that evidence, the trier of fact could have found each element of the crime charged was established beyond a reasonable doubt. *Commonwealth v. Hargrave*, 745 A.3d 20, 22 (Pa.Super. 2000), *appeal denied*, 760 A.2d 851 (Pa. 2000)(internal citations omitted); *Commonwealth. v. Brunson*, 938 A.2d 1057, 1058 (Pa.Super. 2007); *Commonwealth v. Chambers*, 599 A.2d 630, 633 (Pa. 1991). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Hopkins*, 747 A.2d 910, 913 (Pa.Super. 2000). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, and any questions or doubts are to be resolved by the fact-finder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Hopkins, supra* at 913-14.

### a. Sufficiency of the evidence for conviction on Count One – Assault of a Law Enforcement Officer

First, Appellant claims the evidence is insufficient to sustain the charge of Assault of a Law Enforcement Officer because there was no showing of the requisite intent or a resulting harm from Appellant's actions. *Commonwealth v. Fill,* 60 WDA 2019 (Pa. Super, March 12, 2020) (Order); *see also, Amended Concise Statement of Matters Complained of on Appeal,* July 10, 2019, ¶¶ 1, 4).

Appellant's first claim of sufficiency of the evidence is meritless and must be dismissed. The factual basis for Assault of a Law Enforcement Officer at Count One is that "RICHARD ALEXANDER FILL did attempt to cause or intentionally or knowingly cause bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm, to-wit: the said RICHARD ALEXANDER FILL did FIRE A WEAPON IN THE DIRECTION OF TROOPER DEITLE, occurring at 8032 WELCH ROAD, AMITY TOWNSHIP, ERIE COUNTY, PENNSYLVANIA; thereby the said RICHARD ALEXANDER FILL did commit the crime of ASSAULT OF A LAW ENFORCEMENT OFFICER, a Felony of the First Degree." *Information,* Count Two, March 23, 2016 (capitals in original).

To establish the elements of Assault of a Law Enforcement Officer, 18 Pa.C.S.A. § 2702.1, the Commonwealth must prove the following elements: "(1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm." *Commonwealth v. Landis,* 48 A.3d 432, 445 (Pa. Super. 2012). Actual bodily injury is not necessary to sustain a conviction under § 2702.1

7

where evidence is set forth that a defendant attempted to cause such bodily injury. *Id.* The intent required for criminal attempt ". . . can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances" and intent "may be shown by circumstances which reasonably suggest that a defendant intended to cause bodily injury." *Id.* at 446.

Here, the evidence established that Appellant attempted to cause bodily injury by knowingly discharging a firearm out of the window of his property; that Trooper Deitle was a law enforcement officer acting in the performance of his duties; and that Appellant knew law enforcement had surrounded his property. Specifically, multiple Pennsylvania State Troopers, in uniform and in marked vehicles, had been at Appellant's residence for hours attempting to de-escalate him before the perimeter was established. After it was determined the Special Emergency Response Team would be called in, the law enforcement officers on-site formed the perimeter around the property to await SERT's arrival. Trooper Deitle was stationed on the back side of Appellant's residence. Trooper Deitle observed a window on the left back side of the house open up. Trooper Deitle then heard a gunshot in his vicinity, after which he saw the window quickly shut. Upon a search of Appellant's residence immediately after Appellant was removed, Trooper Sipko located a "high-powered pellet gun" with its pump in a half-cocked position. The pellet gun was found approximately three feet away from the same window Trooper Deitle had observed the shot coming from.

Fortunately, Appellant missed Trooper Deitle when he shot at him out the window. However, this does not negate Appellant's attempted actions. The relevant facts are that Appellant acted with a reckless disregard of consequences of his actions and he consciously disregarded an unjustified and high risk that his actions could cause death or serious bodily injury. Under these

8

circumstances, intent can be inferred and the Commonwealth presented sufficient evidence that Appellant discharged his weapon in an attempt to inflict bodily injury upon a known law enforcement officer in the performance of his duties. This claim must be dismissed.

**b. *Commonwealth v. Valentine* and *Commonwealth v. Newman* are inapplicable to the present case.**

Appellant has cited the Superior Court of Pennsylvania case of *Commonwealth v. Valentine*, 101 A.3d 801 (Pa. Super. 2014), apparently relying on the case for the operative definition of a firearm. However, after reviewing the case, the Court cannot glean any support for Appellant's argument regarding the operative definition of a firearm and the issue before the Court.

The facts of *Valentine* involved an armed robbery at a bus stop. It did not involve an assault on a law enforcement officer. The defendant in *Valentine* was found guilty of robbery and the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712 were applied. The defendant appealed, challenging the sufficiency of the evidence for the conviction and the mandatory minimum sentence the defendant received. The Superior Court of Pennsylvania determined the challenge to the sufficiency of the evidence was without merit. Regarding the mandatory minimum sentence, the appellate court noted the sentencing provisions of § 9712 had been declared unconstitutional pursuant to *Alleyne v. United States*, 570 US 99 (2013) and *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014), and therefore the defendant's sentence was vacated and the case was remanded for resentencing.

Both *Newman* and *Valentine* are inapposite to the present matter. Appellant was not given a mandatory minimum sentence. At sentencing, the Commonwealth informed the Court it was not opposed to a deviation from the mandatory minimum sentence authorized by 42 Pa.C.S.A. § 9719.1. *See Sentencing Transcript*, January 23, 2017, pp. 9-10. In fashioning the sentence, the

9

Court stated: "At Count 1, I don't find it appropriate to apply the mandatory minimum, so you get that break." *Id.* at 15.

The only tenuous connection this Court can garner from Appellant's reliance on *Valentine* is the cross-reference in subsection (c) of 18 Pa.C.S.A. § 2701.1, stating the definition of "firearm" is found in 42 Pa.C.S.A. § 9712(e).[2] As defined in 42 Pa.C.S.A. § 9712(e), a "firearm" is "[a]ny weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein." However, the sole issue addressed in *Valentine* was the imposition of mandatory minimum sentences at issue. The mandatory minimum sentence was found unconstitutional in *Valentine* and *Newman*, not the § 9712(e) definition of a firearm. As to Appellant's assertion that *Valentine* and/or *Newman* have declared unconstitutional the definition of a firearm as set forth in 42 Pa.C.S.A. § 9712, and by reference the definition of a firearm as set forth in 18 Pa.C.S.A. § 2701.1, this claim is entirely without merit.

Moreover, the Court notes in Appellant's Amended Post-Sentence Motion, he relies on the definition of a firearm as set forth in 18 Pa.C.S.A. § 6105(i) in his argument regarding the operability of the weapon. As explicitly stated therein, that definition is applicable only to the particular offense of Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms. *See* 18 Pa.C.S.A. § 6105(i). Appellant was not charged under § 6105. Therefore, to the extent Appellant argues the definition set forth in § 6105(i) applies to the present case, the claim is without merit and must be dismissed.

---

[2] Specifically, 18 Pa.C.S.A. § 2701.1(c) states: **(c) Definitions.**--As used in this section, the following words and phrases shall have the meanings given to them in this subsection . . . "Firearm." As defined under 42 Pa.C.S. § 9712(e) (relating to sentences for offenses committed with firearms).

10

### c. Sufficiency of the evidence for conviction on Count Two– Criminal Mischief

Appellant claims the evidence is insufficient to prove he cut down a service pole with a chainsaw as required to sustain the charge of Criminal Mischief. *Commonwealth v. Fill*, 60 WDA 2019 (Pa. Super, March 12, 2020) (Order); *see also, Amended Concise Statement of Matters Complained of on Appeal*, July 10, 2019, ¶ 3.

Appellant's second claim of sufficiency of the evidence is also meritless and must be dismissed. The factual basis for Criminal Mischief at Count Two is that "RICHARD ALEXANDER FILL did intentionally damage real or personal property of another, to-wit: the defendant did CUT DOWN AN ELECTRICAL LINE POLE WITH A CHAINSAW at 8032 WELCH ROAD, AMITY TOWNSHIP, ERIE COUNTY, PENNSYLVANIA causing damage in the amount of AT LEAST $5000.00 more or less, thereby the said RICHARD ALEXANDER FILL did commit a violation of CRIMINAL MISCHIEF, a Felony of the Third Degree." *Information*, Count Two, March 23, 2016, (capitals in original).

To establish the elements of Criminal Mischief, 18 Pa.C.S.A. § 3304(a)(5), the Commonwealth must show Appellant intentionally damaged the real or personal property of another.

In this case, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, it was established beyond a reasonable doubt that Appellant intentionally damaged the real property of another. As discussed in the Court's original 1925(a) Opinion and herein, the evidence demonstrated Appellant had intentionally cut down the service pole with a chainsaw and the service pole belonged to Penelec. It is uncontested that on November 3, 2015, upon law enforcement's arrival at Appellant's residence in response to a call to assist with crisis services,

11

officers observed the service pole lying across the driveway. *Tr.* at 10-12. The pole appeared to be freshly cut and photographs of the cut taken at the time of observation were submitted to the Court during the bench trial. *Id.*; *see also* Commonwealth Exhibits 1-4. Further, a chainsaw was located nearby on a table next to the shed. *Id.* at 52-53. During closing arguments, Appellant conceded the cut on the service pole "looks like a fresh cut and there is a chainsaw there" but argued that it was merely coincidental. *Tr.* at 61. The Commonwealth acknowledged Appellant's concession that there was a clean cut and that Appellant "just happens to have a chainsaw right there," and noted there were no other reasonable explanations for the pole to be down. *Tr.* at 63.

Additionally, there was testimony from Appellant's landlord, Joseph Bizzarro, that on November 3, 2015, during the standoff, he was informed the telephone pole at 8032 Welch Road had been cut down. *Id.* at 40-41. Mr. Bizzarro arrived at the property to check out the damage. *Id.* at 41-42. The damage to the service pole was not covered by Mr. Bizzarro's insurance, but Appellant did eventually reimburse Mr. Bizzarro $3,000.00 for the pole as well as a tree that had been cut. *Id.* at 44-45. During cross-examination, Mr. Bizzarro confirmed that since April 2015, he frequented the property "at least once a week, twice a week" and had the opportunity to observe its condition. *Id.* at 46-47.

The evidence presented by the Commonwealth was consistent and sufficient to support its theory that Appellant had intentionally cut down the service pole with a chainsaw causing damage to Penelec's property. Accepting the above evidence as true and making all reasonable inferences therefrom, the evidence was sufficient to prove beyond a reasonable doubt Appellant was guilty of criminal mischief. This claim must be dismissed.

12

## CONCLUSION

For foregoing reasons, the judgment of sentence should be affirmed. The Clerk of Courts is hereby directed to transmit the record to the Superior Court.

BY THE COURT:

6/22/2020
_____
Date

_Daniel J. Brabender_
_____
Daniel J. Brabender, Jr., Judge

cc:    District Attorney's Office
Richard Fill - #NH7827, SCI-Pine Grove, 191 Fyock Road, Indiana, PA 15701

13