J-A15006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTEN MICHELLE PREVITE | : | |
| | : | |
| Appellant | : | No. 1383 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 15, 2022
In the Court of Common Pleas of Indiana County
Criminal Division at CP-32-CR-0000146-2021

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED:  July 21, 2023**

Kristen Michelle Previte (Appellant) appeals from the judgment of sentence imposed after a jury convicted her of aggravated assault by vehicle while driving under the influence (AA-DUI)[1] and related offenses, and the trial court convicted her of related summary offenses.  We affirm.

The trial court summarized the facts and procedural history as follows:

On February 18, 2020, [Appellant] was involved in a motor vehicle accident in Indiana County, Pennsylvania.  [Appellant] was operating a motor vehicle that sustained severe front-end damage.  The second and third vehicles involved in the accident also sustained damage; these vehicles were operated by Melissa Henico and Kneisha Anthony, respectively.  Due to the nature of the crash, Kneisha Anthony, hereinafter "Anthony," was entrapped inside of her vehicle and sustained injuries.  Anthony's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3735.1.

injuries included a "comminuted displaced fracture of the right patella on the inferior aspect." Trial Tr., p. 102.

As a result of the crash, [Appellant] was charged with one count of [AA-DUI]; DUI: Controlled Substance Impaired, 2nd Offense; DUI: General Impairment of Driving Safely, 2nd Offense; DUI: Controlled Substance-Combination of Alcohol/Drugs, 2nd Offense; Driving at Safe Speed; Exceed Max Speed Limit by 28 MPH; Reckless Driving; and, Fail to Keep Right.

Trial Court Opinion and Order, 10/27/22, at 1-2.

On April 30, 2021, Appellant filed a pre-trial motion requesting dismissal of the AA-DUI charge on the basis that Anthony's injuries did "not rise to the level of serious bodily injury under the laws of the Commonwealth." Omnibus Pretrial Motion, 4/30/21, at 3. Appellant averred the Commonwealth "presented insufficient evidence … for the charge of [AA-DUI]." *Id.*

On October 1, 2021, the trial court entered a 7-page order denying the pre-trial motion. The trial court cited statutory and case law, as well as Anthony's testimony at Appellant's preliminary hearing. Order, 10/1/21, at 3-6. The trial court concluded that "if [] Anthony's testimony was presented at trial and accepted as true, this [c]ourt would be warranted in allowing the charge of [AA-DUI] to go to the jury." *Id.* at 6.

Appellant's jury trial commenced April 26, 2022. At the conclusion of the Commonwealth's case, Appellant's counsel made an oral motion for judgment of acquittal. N.T., 4/26/22, at 122-23. The trial court denied the motion, explaining it had considered

a similar issue … on [Appellant's pre-trial motion]. The [c]ourt has spent a lot of time with this issue, has done a lot of research with regard to this issue, and … given the testimony presented,

- 2 -

the [c]ourt is going to deny the motion and let the matter proceed
to the jury.

*Id.* at 123-24.

The jury convicted Appellant of AA-DUI the following day.  On August

15, 2022, the trial court sentenced Appellant to serve 5 to 10 years of

incarceration for AA-DUI.[2]

Appellant filed a timely post-sentence motion challenging the sufficiency

of the evidence.  The trial court held a hearing on October 11, 2022.  On

October 27, 2022, the court entered an opinion and order denying the motion.

Appellant timely appealed.  At the direction of the trial court, Appellant filed a

concise statement pursuant to Pa.R.A.P. 1925.  The trial court subsequently

adopted its October 27, 2022, opinion and order "as its Opinion per Rule

1925(a) of the Pennsylvania Rules of Appellate Procedure."  Order, 12/19/22.

Appellant presents the following issues for review:

1. Should the guilty verdict for [AA-DUI] be vacated because the
   evidence presented at trial was insufficient to prove beyond a
   reasonable doubt the element of serious bodily injury had been
   sustained by the victim?

2. Did the trial court abuse its discretion by upholding the jury's
   guilty verdict of [AA-DUI] as against the weight of the evidence in
   respect to the element of a serious bodily injury having been
   sustained by the victim?

Appellant's Brief at 3.

_____

[2] The trial court amended the sentence to "order reentry supervision of 12
months consecutive to and in addition to any other lawful sentence issued by
the [c]ourt."  Order, 8/17/22.

1. SUFFICIENCY

In her first issue, Appellant argues the evidence was insufficient to prove Anthony suffered serious bodily injury as required by 75 Pa.C.S.A. § 3735.1. This Court has explained:

> We are mandated to frame our sufficiency review of Appellant's AA–DUI convictions by viewing all the evidence admitted at trial in the light most favorable to the verdict winner, to determine whether there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. We may not weigh the evidence and substitute our judgment for the fact-finder who[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Spotti**, 94 A.3d 367, 374 (Pa. Super. 2014) (*en banc*) (citations and quotation marks omitted).

> Pertinently, the Vehicle Code provides:

> Any person who negligently **causes serious bodily injury to another person** as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3735.1(a) (emphasis added).

> **"Serious bodily injury."** Any bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

75 Pa.C.S.A. § 102. **See also** 18 Pa.C.S.A. § 2301 (same).

- 4 -

Appellant concedes Anthony "was injured as a result of the accident." Appellant's Brief at 13. However, Appellant argues Anthony did not suffer serious bodily injury because her injuries 1) were not life threatening; 2) did not result in permanent disfigurement; and 3) did not result in protracted loss of bodily function. *See id.* at 27.

Appellant emphasizes the "injuries [never] created, at any time or in any way, a risk of death." *Id.* at 13. Appellant states:

> During the time emergency personnel were on the scene of the accident, Anthony was fully conscious and based upon the attending emergency personnel's knowledge and expertise, did not triage her as needing life-saving care, but rather routinely transported her to the hospital for evaluation.

*Id.*

Appellant also observes Anthony suffered "no serious, permanent disfigurement." *Id.* at 16. Appellant maintains:

> Here, Anthony's injuries did not disfigure her. She had an injury to her knee which potentially may have left a small superficial scar on her knee, but nothing which would result in, or arguably be considered as, tarnishing her appearance, defacing her, mutilating a part of her body, damaging her body in a noticeable way to indicate that she had been maimed, wounded, broken, and/or flawed. Again, no evidence was presented at trial that Anthony had suffered a serious, permanent disfigurement as those terms are commonly and reasonably defined and understood.

*Id.* at 15.

Finally, Appellant claims the "only other possible way in which the Commonwealth could prove a serious bodily injury is through the protracted

loss or impairment of the function of any bodily member or organ." ***Id.*** at 16.

Appellant states:

> Although Anthony had some physical impairment and substantial pain as a result of her injury (the legal definition of "bodily injury" in Pennsylvania), she at no point lost the function of a bodily member or organ, and even if arguably there was such a loss, the same was certainly not protracted nor excessive as those terms are commonly defined and as are required to be present for a finding of serious bodily injury.

***Id.*** at 20.

We are unpersuaded by Appellant's argument. This Court has explained:

> Serious bodily injury encompasses varying degrees of injury. ***See [] Spotti***, 94 A.3d [at 381] (finding evidence sufficient to support determination that victim suffered "serious bodily injury" when victim suffered bone infection in arm injured in car crash, spent almost a week in the hospital following surgery to combat infection, and continues to have limited use of arm); ***Commonwealth v. Caterino***, 451 Pa. Super. 42, 678 A.2d 389 (1996) (holding serious bodily injury existed where the victim underwent surgery to repair severed artery).

***Commonwealth v. Grays***, 167 A.3d 793, 808 (Pa. Super. 2017).

In ***Spotti***, we concluded there was sufficient evidence to support a finding of serious bodily injury where the victim testified to experiencing neck strain, wrist issues, and needing physical therapy. ***Spotti***, 94 A.3d at 381. The victim also had elbow pain and was hospitalized for a bone infection; the victim testified that he had long-term effects on his abilities with his right arm. ***Id.***

- 6 -

Likewise, in *Commonwealth v. Best*, 120 A.3d 329 (Pa. Super. 2015), we deemed the evidence sufficient for the jury to find protracted impairment — and thus serious bodily injury — as to two victims. One victim required leg surgery, was hospitalized, and "described the ongoing ill effects that the accident has had on his life." *Id.* at 334. The other victim was also hospitalized, had hip surgery, and "described the ill effects that the accident has had on her life." *Id.*

Here, Indiana Borough Police Detective Andrew Perry testified to responding to the accident, which occurred more than two years prior to trial. Detective Perry stated that he "ran over" to the driver's side door of Anthony's vehicle, but "was unable to force the door open." N.T., 4/26/22, at 60. Detective Perry was able to communicate with Anthony, who was "hysterical and crying" and "concerned for her children." *Id.* Anthony also indicated she was unable to move. *Id.*

Anthony was 35 years old at the time of trial. *Id.* at 48. She testified that she was driving her 10-year-old daughter to cheer practice when the accident occurred. *Id.* at 27. Anthony thought she initially "passed out" because of the accident's impact. *Id.* at 28. However, she subsequently "tried to open [the] car door to get to [her] kids," but could not open the door, and "pain set into [her] leg and [she] realized [she] couldn't move [her right] leg." *Id.* She stated she "was afraid to look [at her leg, and felt] a very sharp pain, like a throbbing pain, and [she] couldn't move [her] leg." *Id.* at 29.

First responders extracted Anthony from the car, placed her on a stretcher, and an ambulance transported her to the hospital. *Id.* Anthony relayed that medical personnel examined her for leg and wrist pain, and discharged her with crutches and a leg brace because she "couldn't bear weight on [her] leg." *Id.*

Anthony had surgery on her leg two days after the accident. *Id.* at 32. She then participated in physical therapy, which lasted for approximately eight months. *Id.* at 34-35. Anthony testified that she continues to do her physical therapy exercises at home "just to keep the knee moving." *Id.* at 35.

According to Anthony, she can ride her bike and work as an elementary school paraprofessional, although both activities are impacted by the injury. *Id.* at 36, 40, 45. She favors her left leg due to the injury to her right leg, and she is limited in performing activities which require "a lot of weight-bearing" or carrying. *Id.* at 37, 46. Anthony cannot physically perform household chores (such as carrying laundry upstairs), carry her youngest child, or run and camp like she had prior to the accident. *Id.* at 36-38. She still takes over-the-counter medication as needed for leg pain. *Id.* at 39, 42, 47-48.

Anthony described her impairment:

I don't kneel at all. If I kneel, I need help to get back up, and the sensation in my leg … I just can't tolerate it, the feeling. I don't kneel at all. If I squat, I use support to get back up, whereas before I would jump, run, go.

*Id.* at 48.

- 8 -

Physician Assistant Kara Wess Anderson treated Anthony when she arrived at the hospital emergency department. *Id.* at 101. Ms. Anderson testified that x-rays indicated Anthony suffered a "comminuted displaced fracture of the right patella on the inferior aspect." *Id.* at 102. Ms. Anderson stated that Anthony's knee "was basically broken apart into multiple pieces or out of place, and it was on the lower portion of the kneecap." *Id.* Consequently, Ms. Anderson referred Anthony to an orthopedic surgeon "for surgery to reattach the patella, which is the kneecap." *Id.* at 104.

Anthony's orthopedic surgeon, Dr. David Wilson, testified that "radiographs showed [Anthony] had a fractured kneecap which was displaced, and on exam, consistent with [her] large swollen knee."[3] *Id.* at 112. Dr. Wilson explained the "kneecap, what we call the patella, connects the upper leg with the lower leg via tendons. So it's what we call the extensor mechanism that allows you to walk." *Id.* at 113. He continued:

> There's a tendon connecting it to your shinbone that allows you to move the knee. In [Anthony's] case, she had a fracture of the bone right at the bottom of the kneecap, and it actually separated [from] the tendon. We call this structure … the retinaculum, and that actually was torn. So her extensor mechanism was disrupted, and that ha[d] to be repaired. The surgery is to reconstruct the extensor mechanism.

*Id.* at 113-14.

Appellant's counsel questioned Dr. Wilson on cross-examination:

---

[3] The trial court accepted Dr. Wilson "as an expert in his field of orthopedic surgery." *Id.* at 112.

Q. With a repair of this type, is it expected, you said about a year for a full recovery?

A. Yes.

Q. So when we talk about a full recovery, we're talking about being able to walk and being able to handle daily activities and those kind of things?

A. Well, no. I think the[ patient] should be back to some of those activities before the year. **The year is more what we call maximum medical improvement to where we're trying to get them back to where they were pre-injury state**, but along the way patients are walking and back to that type of activity.

*Id.* at 117-18 (emphasis added).

On re-direct, Dr. Wilson described "maximum medical improvement" as a "gauge to measure how well people are going to do. [I]t's sort of **a time frame that we have when somebody is probably the best they're going to be**." *Id.* at 119 (emphasis added).

Upon "complete review and evaluation of testimony," the trial court concluded Anthony's injury was "consistent with the legal definition of 'serious bodily injury.'"[4] Trial Court Opinion and Order, 10/27/22, at 8. We agree. The evidence was sufficient for the jury to find that Anthony suffered

---

[4] The trial court observed: "When Dr. Wilson cleared Anthony at the one-year mark, he believed that she had reached maximum medical improvement." Trial Court Opinion and Order, 10/27/22, at 7 (citation omitted). The court referenced Dr. Wilson's testimony about "maximum medical improvement" being the time to heal to "maximum capacity and further improvement is not possible." *Id.* at n.3. The court stated, "the term does not mean that the injured subject is completely healed; rather, as stated, no further improvement is possible." *Id.*

protracted impairment of the function of her knee which constituted serious bodily injury.

2. WEIGHT

In her second issue, Appellant assails the weight of the evidence. Appellant argues the trial court abused its discretion by "allowing the guilty verdict to remain." Appellant's Brief at 24. Appellant claims "the only evidence presented at trial was scant and limited evidence that Anthony suffered a bodily injury, let alone a serious bodily injury." *Id.* Appellant contends: "Injuries classified as serious bodily injury should be saved for extreme injuries when a person has lost a function of their body." *Id.* Neither the record nor the law support this argument.

Our standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. *Best*, 120 A.3d at 345.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence ….

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence, and determine the credibility of witnesses. **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the [jury, as] factfinder." **Commonwealth v. Hopkins**, 747 A.2d 910, 917 (Pa. Super. 2000). "In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." **Talbert**, **supra** at 546 (citation omitted). This Court may not substitute our judgment for that of the trier of fact. **Id.** at 545.

Pertinently, a weight claim "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. **Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009). Appellant has waived her weight claim. In her post-sentence motion, Appellant challenged sufficiency, but not weight, and she did not otherwise raise her weight claim as required in Pa.R.Crim.P. 607(A).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/21/2023